KATHRYN G. BRAEMAN, APPELLANT AND CROSS-APPELLEE, v. JOHN A. BRAEMAN, APPELLEE AND CROSS-APPELLANT.
222 N. W. 2d 811

Filed October 31, 1974. No. 39168.

H. Jeanne Thorough and Kelly & Thorough, for appellant.

Paul E. Galter and Bauer, Galter & Geier, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, Mc-Cown, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

This is an action brought by the wife, petitioner, against the husband, respondent, praying for dissolution of the marriage, child custody and support, division of property, alimony, and attorneys' fees. The respondent acknowledged that the marriage was irretrievably broken and by cross-petition asked for custody of the children of the parties. After trial the court found the marriage to be irretrievably broken, entered a decree of dissolution, and found that both parties were fit and proper persons to have the custody of the children of the parties. Custody of the daughter was given to the petitioner and custody of the son to the respondent, detailed provision for visitation rights and periodic temporary exchanges of custody being provided. The decree divided the property of the parties, and awarded alimony and child support. The petitioner appealed. On the appeal she assigns as error: (1) The order splitting custody of the children; (2) insufficiency of the award of alimony and child support, and inadequacy of the amount of property awarded to her; and (3) inadequacy of allowance of attorneys' fees. We affirm.

The parties were married on March 29, 1969. At the time of trial in 1973 the petitioner was 32 years of age and the respondent 40. The petitioner had previously been married. The son, David, was born August 11, 1970. The daughter, Beth, adopted by the respondent as soon after the marriage as was legally permitted, had been born to the petitioner on October 3, 1966. Respondent holds a Ph.D. Degree and is a professor of history with tenure at the University of Nebraska. His annual salary is $16,000, supplemented

by summertime teaching or research grants as well as royalty income from publications. The petitioner has a Master's Degree in English and at the time of the marriage was employed and earning $8,000 per year. At respondent's request she terminated this employment before the marriage.

The trial record explores in great detail the conduct and attitudes of the parties with reference to the children. We have examined that record carefully. Our references to it, however, will be only by way of conclusion or by occasional illustrative example.

It is evident that each parent loves both children and that each parent genuinely desires custody because each believes the best interests of the children demand it. This does not appear to be one of those cases in which the custody struggle is motivated primarily by desire for retribution against the opposite spouse. It is evident, however, that the views of the parties as to what the best interests of the children require and their views on child rearing differ radically.

The evidence demonstrating why the marriage foundered bears directly upon the child custody issue. Except for minor teaching assignments the petitioner was not gainfully employed during the marriage. She did, however, involve herself in a multitude of outside activities which left little time for household duties or care of the children. As a consequence a great deal of paid babysitting was required as well as some outside hired help for cleaning the house. Ultimately the petitioner became a candidate for Congress. The respondent threatened to bring an action for dissolution of the marriage if she did so, but he did not carry out the threat. Following her defeat in the congressional primary in the spring of 1972, the petitioner became, in the fall of 1972, a full-time law student at the University of Nebraska. Respondent had requested

that she postpone this endeavor until David reached school age.

The evidence supports the clear conclusion that the respondent assumed a large part of the household chores and the care of the children, including meal preparation and shopping. The daughter, Beth, developed psychological and medical problems related to the tension existing in the home between the parents. They consulted medical and psychiatric help for her. The following testimony of the psychiatrist is illustrative: "A. At that time, it appeared to me by what both parents said, by what Beth said and by the actions in the office, that Dr. Braeman was much more involved with her and with the baby. He was in the baby's presence several times [more] than Mrs. Braeman was.

"[As to] discipline in the office, he would say something, they would usually behave. And when she would say something, they'd go right on.

"She was very involved in bus committee and other things, and felt that she should be going to these meetings almost every day. And this was a real bone of contention that we discussed."

The family pediatrician stated: "Q. Now, did the interest that was shown by John Braeman include the daughter Beth, or Elizabeth, as well as the son David?

"A. Absolutely. And any requests that I made which involved him, any problems that she had, were always complied with.

"Q. Did Dr. Braeman seem to be intelligent and knowledgable in connection with the problems of the children?

"A. Yes. As a matter of fact, [he] often seemed to be more cognizant of things like details of the diet and sleep hours and so on, certainly than an average father would know. . . .

"Q. Did Dr. Braeman occasionally have conversations

with you about preparation of meals, things of that nature?

"A. Yes, he did. I would say that it was my opinion that he was more involved in the meal planning and the meal preparation and so on than Kathy. Now, this may have had something to do with her other activities, I don't know.

"But I know he very often would talk with me about some concern he would have about the make-up of the diet or, in other words, the nutritional discussion often was pretty heavy on his shoulders."

The respondent's attitude toward the children was described by disinterested witnesses as that of "a patient and loving father." "Very affectionate and very playful. He obviously enjoyed the children and the children obviously enjoyed him." The same witness gave favorable testimony for the petitioner as follows: "Q. At the time you were in the home, did you also observe Mrs. Braeman with the children? A. Yes. Q. What did you observe about that? A. That she also liked the children very much and they got along well."

Petitioner was cross-examined about a newspaper article written about her as follows: "Q. And she interviewed you, and there were a number of quotes, direct quotations of the statements that you made in that article; is that correct? A. Yes." One of the quotations is as follows: " 'John takes care of the children and is more involved with them than the average man. The children have become very important to him and that is good for both of them.' " In this article petitioner stated her view that it was not good for a mother to seek fulfillment in her children.

Respondent favored what is described as a structured environment for the children. Petitioner favored what is referred to as an unstructured environment.

The petitioner's principal argument in support of her position that she should have permanent custody of

both children is that the separation of the children is psychologically bad for them and that therefore their best interests require they be kept together in the mother's custody. She cites statements of this and other courts which point out the general desirability of keeping children of the family together. However, we have said that considerations of public policy do not, in all cases, prevent the splitting of custody of the children between the parents upon dissolution. Humann v. Humann, 180 Neb. 719, 144 N. W. 2d 723. The ultimate standard is that custody and visitation of minor children shall be determined on the basis of their best interests. § 42-364, R. R. S. 1943. Even though the issue of child custody is triable de novo in this court, the judgment of the trial court is entitled to great weight in determining the best interests of the children. Scripter v. Scripter, 188 Neb. 576, 198 N. W. 2d 201.

The order of the trial court on custody was as follows: ". . . that petitioner is hereby awarded the care, custody and control of Elizabeth Kristin Braeman, subject to all reasonable rights of visitation by respondent; that respondent is hereby awarded the care, custody and control of David Saul Braeman, subject to all reasonable rights of visitation by petitioner; that said reasonable visitation rights shall include as a minimum: 1) the placement of the care, custody and control of both minor children variously in petitioner and respondent, on alternate weekends, from 5:00 p.m. Friday until 5:00 p.m. Sunday of each week, with petitioner receiving custody on Friday, March 16, 1973; 2) that during a five hour period between the approximate hours of 4:00 p.m. to 9:00 p.m. on Wednesday of each week, commencing Wednesday, March 14, 1973, the care, custody and control of both minor children shall alternate between petitioner and respondent, save number 3 below, said alternation shall commence with respondent on

March 14, 1973; 3) The care, custody and control of both minor children shall be with petitioner exclusively for one calendar month of each summer and with respondent exclusively for one calendar month of each summer; and 4) The care, custody and control of both minor children shall be in petitioner for Easter and Christmas Days of each year and with respondent for Thanksgiving Day and Two Days of the Jewish High Holidays of each year; . . ."

That order was made after the trial court personally heard the testimony of the parties and many witnesses with reference to the child custody issue. There is nothing in the record in the way of expert testimony or otherwise which leads us to conclude that the arrangements provided for in the order are likely to be any more harmful than would a more complete separation from one parent or the other. In the final analysis there is no magic in the pronouncement by this or any other court in matters of child custody. It can only be hoped that both parties will extend themselves in the best interests of the children in order to make the arrangement work. With them rests the ultimate responsibility for their children.

Under the circumstances here, even if both children were to be awarded to one party or the other, they would necessarily spend a considerable amount of time in the care of hired persons. The petitioner is a full-time law student and must necessarily sometime become employed full time. The respondent also works full time. However, a substantial part of his work consists of writing, research, and class preparation, which he is free to do at home. The record supports the conclusion that he is actually more available to the children than can be the petitioner in her present or foreseeable future situation.

We do not feel that the order of the trial court with

reference to the custody of the children should be disturbed.

The respondent was required to pay to the petitioner for the support of Beth $150 per month. The petitioner was awarded alimony in gross of $3,600, payable $100 per month until February 12, 1976. She was also awarded attorneys' fees of $1,500 for services in the trial court. There was no accumulation of property during the marriage save the household goods and a small equity in the residence. Petitioner was awarded the home of the parties subject to the existing lien, and received most of the household furniture. Respondent was awarded the 1969 Chrysler automobile owned by the parties, certain mutual funds which he owned before the marriage, and certain savings and bank accounts which in amount are substantially less than the savings brought to the marriage. He was also awarded his pension fund, his books, and office furniture. Each party was awarded his own personal effects. He was required to maintain in force medical insurance for the benefit of the children.

The respondent's take-home pay is less than $900 a month. From summertime teaching and a modest amount of royalties from publications, he has perhaps $2,500 additional gross annual income. The petitioner has demonstrated earning capacity of $8,000 per year and probably considerably more when she completes her legal education. We find that the child support, alimony, property division, and attorneys' fees provisions of the decree are reasonable and should not be modified. We affirm the judgment of the lower court. Each party shall pay his own costs in this court and his own attorneys' fees in this court.

AFFIRMED.