SALLY J. YOUNG, APPELLANT, v. DAYMON L. YOUNG,
APPELLEE.

237 N. W. 2d 135

Filed January 8, 1976. No. 39977.

Leo M. Williams, for appellant.

Brogan & Stafford, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH,
McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

In this dissolution of marriage action the trial court
dissolved the marriage and awarded custody of two adop-
tive children of the parties to the husband, Daymon L.
Young. The wife, Sally J. Young, prosecutes this ap-
peal. The only issue contested is the custody of the
children. We affirm.

The parties met while students at the University of

(163)

South Dakota in the late 1950's. Sally was graduated as a nurse in 1960. Daymon received a degree of Bachelor of Science in Education in 1961. They were married in June of 1962. They decided to become missionaries and, after a year's study at the Moody Bible Institute in Chicago, were assigned to a mission in Nigeria where Daymon taught and Sally worked as a nurse.

Tests taken in Nigeria indicated that the parties would not be able to have children. Personal problems arose and the parties drifted apart. Sally became involved with a doctor and as a result the parties returned to the States. After their return, the parties, still desiring children, turned to adoption proceedings. In January of 1969, Monte Ryan was placed in their home at approximately 6 weeks of age. In March 1971, Amber Leah came to their home at about 3 weeks of age. In 1971, Daymon completed his work for a Masters Degree in Social Work. At the time of the filing of this action Daymon was a social worker for the South Dakota Welfare Department in Yankton, South Dakota. However, the parties lived on the Nebraska side of the Missouri River near Yankton.

Both parties were in agreement that the marriage was irretrievably broken. Much testimony was adduced to suggest the unfitness of one or the other to have the custody of the two adopted children. It was stipulated and agreed that a child born on February 17, 1974, during the marriage, was not born of the marriage; Daymon was not the father of the child and his custody was not involved in the action. The testimony of Sally is that the child was the result of artificial insemination prompted by her desire to bear a child. No purpose will be served by detailing the respective claims of the parties. The evidence is conflicting and our law in such situations is well settled.

Section 42-364, R. S. Supp., 1974, provides, so far as material herein, as follows: "Custody and visitation of minor children shall be determined on the basis of their

best interests. Subsequent changes may be made by the court when required after notice and hearing.

"(1) In determining with which of the parents the children, or any of them, shall remain, the court shall consider the best interests of the children which shall include but not be limited to:

"(a) The relationship of the children to each parent prior to the commencement of the action or any subsequent hearing; * * *

"(2) In determining with which of the parents the children, or any of them, shall remain, the court shall not give preference to either parent based on the sex of the parent and no presumption shall exist that either parent is more fit to have custody of the children than the other."

We stated in Christensen v. Christensen (1974), 191 Neb. 355, 215 N. W. 2d 111: "The judgment concerning the custody of children is necessarily quite subjective in nature. Many factors may be considered in light of the particular circumstances of each individual case. The general considerations of the moral fitness of the parents, of respective environments offered by each parent, the emotional relationship between the children and their parents, their age, sex, and health, the effect on the children of continuing or disrupting an existing relationship, the attitude and the stability of character of each parent, and the capacity to furnish the physical care and education and needs of the children are some of many factors for the court to consider. In evaluating the general concept of the best interests and welfare of the children it is settled and fundamental law that this court will give weight to the fact that the trial judge saw and observed the witnesses and the attitude of the parents at the trial."

When viewing these cases from a cold record, the decision of the trial judge is peculiarly entitled to respect. He saw all the parties and witnesses. He was in closer touch with the situation than this court can be from a

review of a written record. While this case is triable de novo in this court, we cannot overlook the fact that the judgment of the trial judge is entitled to great weight in determining the best interests of children in custody proceedings. While the trial court did not find that either party was unfit to have the custody of the children, he did place them in the custody of Daymon. From a review of the record, we cannot say that he abused his discretion in this respect.

Sally, taking comfort from our earlier cases, argues that absent an affirmative demonstration that she is unfit, unsuitable, or unable to provide a good home, she should have the custody of the children because of their tender years. This was the law previous to July 12, 1974, the effective date of the last amendment to section 42-364, R. S. Supp., 1974. As we said in Kockrow v. Kockrow (1974), 191 Neb. 657, 217 N. W. 2d 89: "As we interpret our no-fault divorce statute, under all ordinary circumstances the father and mother of minor children born in lawful wedlock have an equal and joint right to their custody and control, and neither has a superior right over the other." This applies equally to lawfully adopted children.

For the reasons given, the judgment of the trial court is affirmed. Costs, including an allowance of $300 for services in this court for petitioner's attorney, are taxed to the respondent.

AFFIRMED.