PATRICIA ANN BOROFF, APPELLEE, v. EUGENE ALLAN BOROFF, APPELLANT.

250 N. W. 2d 613

Filed February 16, 1977. No. 40705.

William G. Line of Kerrigan, Line, Martin & Hanson, for appellant.

John R. O'Hanlon of O'Hanlon & O'Hanlon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

This is an appeal from a District Court decree dissolving the marriage of the parties; granting custody of a daughter to the mother, and of a son to the father; and awarding alimony and child support to the wife. The husband has appealed, contesting the custody, alimony, and child support awards.

On November 18, 1975, Patricia Ann Boroff, the appellee herein, petitioned the District Court for Washington County to dissolve her marriage, alleging that the marriage was irretrievably broken. In her petition, she did not specifically request alimony, custody of her two childen, child support, or a division of property, but prayed for other equitable relief. Respondent Eugene Allan Boroff, the appellant herein, answered the petition on November 19, 1975, admitting the allegations thereof, and prayed that the marriage be dissolved, that the custody of the children be awarded to him, and also for other equitable relief.

Hearing was had on February 12, 1976, at which time both parties and their children testified. Both parties acknowledged that their marriage was irretrievably broken, and that issue is not contested in this appeal. The Boroff's have two children, Vickie, a 12-year-old daughter who attends elementary school in Herman, Nebraska; and Robert, a 14-year-old son who

attends Tekamah-Herman High School. The parties were married in 1961. Patricia is 36 years old, and Eugene is 34 years old.

Patricia is currently employed at a cafe in Herman, Nebraska, and earns $60 in net income each week. She works from 5:30 a.m. until 1 p.m. 3 days a week, and from 5:30 a.m. until 2 p.m. 2 days a week. She has a high school education, and has previously worked for Western Electric, wiring PBX machines.

Patricia testified at trial that she was asking for custody of the children and an award of child support that would enable her to meet household expenses. She itemized monthly household expenses, totalling $511. Patricia stated that if she were to receive custody of the children, she was asking that she receive the parties' home as part of the property division. She acknowledged that she and her husband had agreed that the party who received custody of the children would remain in the home with the children until they were grown, and that the equity in the house would then be equally divided.

Patricia also asked that she receive a 1965 Buick automobile which the Boroffs owned, and that she receive necessary household furnishings. She stated that Eugene should receive the 1969 Chevrolet pickup they owned, and that he was entitled to the bonds that they jointly owned because he had paid for them. Patricia did not specifically request alimony either in her petition or at trial. In view of her prayer for equitable relief, this was not necessary. Browers v. Browers, 195 Neb. 743, 240 N. W. 2d 585 (1976).

Finally, Patricia stated that Eugene had been a good father to the children, and that he was a fit person to have custody of the children. She did state, however, that she did not think that Eugene could do the wash, fix the children's meals, and keep the house clean; and she believed that she could provide a better home for the children than Eugene could provide.

Eugene stated that he is the postmaster at Herman, Nebraska, and that he earns $14,489 per year. With his deductions, he receives a monthly take-home pay of approximately $790. The house which the Boroffs own is worth approximately $12,000, and they owe a loan company $3,900.20 on the house, which is paid off at the rate of $61 per month, including real estate taxes and insurance.

Other assets of the Boroffs as testified to at the time of the divorce total $3,144.06. Eugene listed current debts such as oil bills, hospital bills, service station bills, mastercharge, etc., as being in the amount of approximately $600.

Eugene stated that he could do the household duties and take care of the children. He testified that the children got average grades in school, and that their grades had gone down due to domestic tensions over the divorce. Otherwise the children have no problems, and get along well in their community. Eugene agreed with Patricia that the person who is awarded custody of the children should be awarded the possession of the house until the children are grown, and that the equity in the house should then be divided equally between them.

The children testified outside the presence of each other and their parents. Robert stated that he wished to live with his father because his father could care for him better, and could understand his problems better. Robert had not discussed the matter of custody with his mother, but had talked with his father about who he wished to live with. Robert testified that he got along well with his sister, and wished to be together with her. Robert stated that he did not wish to live with his mother because "she goes places and leaves us at home sometimes." Robert stated that his mother had been doing this for 4 or 5 weeks, and that she would be away in the evening from 7 to 11. Robert is involved in scouting, and his father is scoutmaster.

Vickie also testified that she wished to live with her father, as she did not "like the friends my Mom hangs around with," and did not like her mother going to the bar. Vickie stated that her mother went to the bar on Wednesdays, when she went bowling. Vickie stated that she could talk to her father better than she could to her mother, and that she wanted to stay with her brother. Vickie had not talked with her mother about custody, but had talked with her father about it.

On redirect examination, Patricia stated that when she filed for divorce, she thought that the children should decide who they wanted to live with. She now thinks that the children would be better off with her, and particularly that Vickie needs a mother because she is entering her maturity. Patricia acknowledged that she bowls on Wednesday nights, and that she has a beer or two on such occasions. Ordinarily Patricia is home in the evenings with the children. Patricia admitted that Eugene had spent quite a bit of time with the children in recent years, and that he has been a good father.

In a decree dated February 12, 1976, the District Court dissolved the marriage, and made the following awards, which we summarize as follows:

(1) The parties shall receive the house and real estate as tenants in common, subject to the right of Patricia to live in the house rent free until Vickie becomes of legal age or fully self-supporting; Patricia shall pay the utilities and expenses of ordinary wear and tear on the house while she is in possession;

(2) Patricia shall receive the household goods subject to the indebtedness thereon, which she is to pay;

(3) Patricia is to receive the 1965 Buick;

(4) Patricia is to receive her checking account ($2.29), her credit union account ($24.39), and the savings account ($10.82);

(5) Eugene is to receive the pickup truck;

(6) Eugene is to receive his checking account ($203.86), his credit union account ($3.02), and the savings bonds ($380);

(7) Both parties are to equally pay the loan on the house (balance of $3,900.20) in $61 monthly installments;

(8) Eugene is to pay outstanding bills totaling approximately $600;

(9) Eugene is to pay Patricia alimony in the amount of $5,000 at the rate of $1,000 per year;

(10) Patricia shall have the custody of Vickie until she becomes of legal age, subject to reasonable visitation by Eugene;

(11) Patricia shall receive $300 child support per month until Vickie becomes of legal age or fully self-supporting;

(12) Eugene shall have custody of Robert until he becomes of legal age, subject to reasonable visitation by Patricia; and

(13) Eugene shall pay fees of $350 for Patricia's attorney and court costs of $26.

Eugene has appealed from the decree of the District Court, contending that the court erred: (1) In granting custody of Vickie to Patricia, thereby splitting the children contrary to their expressed wishes; (2) in awarding Patricia alimony when no alimony was asked for by Patricia and no evidence was adduced in support of an alimony award; (3) in awarding excessive alimony; (4) in awarding Patricia possession of the family dwelling; and (5) in awarding Patricia an excessive amount of child support.

The first issue to be addressed is whether the District Court erred in granting custody of Vickie to Patricia, thereby splitting the children contrary to their expressed wishes. Section 42-364, R. S. Supp., 1976, provides in part: "(1) In determining with which of the parents the children, or any of them, shall remain,

*the court shall consider the best interests of the children,* which shall include, but not be limited to:

"(a) The relationship of the children to each parent prior to the commencement of the action or any subsequent hearing;

"(b) The desires and wishes of the children if of an age of comprehension regardless of their chronological age, when such desires and wishes are based on sound reasoning; and

"(c) The general health, welfare, and social behavior of the children.

"(2) In determining with which of the parents the children, or any of them, shall remain, *the court shall not give preference to either parent based on the sex* of the parent and no presumption shall exist that either parent is more fit to have custody of the children than the other." (Emphasis supplied.)

The Nebraska cases are clear in holding that the mother and father have an equal and joint right to the custody of their children, and that custody shall be determined on the basis of the best interests of the child. Young v. Young, 195 Neb. 163, 237 N. W. 2d 135 (1976).

In this case, both children expressed the wish to live with their father rather than their mother. The children were clearly of an age of comprehension, as required by section 42-364, R. S. Supp., 1976, and their wishes appear to have been based on sound reasoning. Both believed that social activities their mother engaged in were either improper or unnecessary. The wishes of the children, however, are not dispositive of the issue. " 'While the wishes of a child who has reached sufficient age, and has the ability to express an intelligent preference, are entitled to consideration, the wishes of the child are not controlling.' " Miller v. Miller, 196 Neb. 146, 241 N. W. 2d 666 (1976). See, also, Goodman v. Goodman, 180 Neb. 83, 141 N. W. 2d 445 (1966). Thus, although the wishes of the children in this case should have been considered by the trial court,

they are not dispositive of what constitutes the best interests of the children.

In reference to the other factors listed in section 42-364 (1), R. S. Supp., 1976, the evidence indicates that the relationship of the children to each parent prior to the commencement of the action was good, although the children expressed their disapproval of their mother's social activities. There was no evidence of any serious conflict between the children and either parent. Both children stated that they felt they could talk to their father more easily than they could talk to their mother. The general health, welfare, and social behavior of the children appeared to be normal, although the boy's grades at school were, at best, average.

In Young v. Young, *supra*, the court listed several other factors which are relevant in determining the best interests of a child: Moral fitness of each parent; the environment offered to the child by the parent; the emotional relationship of the children and each parent; the age, sex, and health of the child; the attitudes of each parent toward the child; each parent's capacity to furnish care to the child; and whether the child's social relationships would be disrupted by one parent having custody rather than the other parent. In this case, applying these factors does not result in a clear conclusion that one parent, rather than the other, should have custody of the children.

A final factor to consider is that the children will be split between the parents as the decree now stands. Although this court has acknowledged that it is sound public policy to keep children together when possible, considerations of public policy do not, in all cases, prevent the splitting of the custody of the children when a marriage is dissolved; rather, the ultimate standard is the best interests of the children. Braeman v. Braeman, 192 Neb. 510, 222 N. W. 2d 811 (1974); Humann v. Humann, 180 Neb. 719, 144 N. W. 2d 723 (1966).

The trial court, in splitting custody of the children,·

stated: "I hate to do this, but I'm going to split these children. I think the boy has definitely indicated that he wanted to be with his father. He's over 14, I think, that his counsel's indication here about, thought he could pick his own guardian. * * * as far as the girl is concerned, I think it's paramount that she be with her mother until she gets through maturity. I have some personal experience with that. I've been guardian, but have had to exercise guardianship rights of both boys and girls and I think that's that's very necessary that this girl get up to her maturity with the mother. They're both fit, and get up to age 16."

We call attention to section 42-364(2), R. S. Supp., 1976, which provides that "the court shall not give preference to either parent based on the sex of the parent and no presumption shall exist that either parent is more fit to have custody of the children than the other." The trial court gave no reason why the wishes of the children should be ignored, and why the custody of the children should be split, other than his belief that Vickie should be with her mother until she reached maturity. The trial court did not find that Vickie's wish to be with her father was not based on sound reasons, or that Vickie was not of an age of comprehension.

On balance, we believe that the court should have placed custody of both children in the father. If this were done, the wishes of the children would have been followed, the children would not have been split, and the father, who was admittedly a good father and fit parent, and who financially is probably in a better position to support the children, would have custody. This court clearly has the power to modify awards granting custody of children to a parent, as marriage dissolution actions are tried de novo by this court on appeal. Schuller v. Schuller, 191 Neb. 266, 214 N. W. 2d 617 (1974). In this case the trial court's determination did not really turn on its accepting one version of the facts rather than another. The facts in this case

are largely undisputed, and simply present a question of law as to who is entitled to custody of the children. In this case we conclude that Eugene should be given the custody of both children.

Since we determine that Eugene should be awarded the custody of Vickie, it is obvious that the award of child support to Patricia must be vacated; and pursuant to the agreement of the parties, Eugene should be awarded possession of the house until the children reach their majority. The parties clearly agreed that whoever received custody of the children should receive possession of the house until the children are of legal age or self-supporting, at which time the equity in the house would be divided equally between them. The question then arises as to whether the award of alimony should remain the same, and whether the household goods should be awarded to Eugene rather than to Patricia.

The ultimate criteria in determining alimony is one of reasonableness. Mathias v. Mathias, 194 Neb. 598, 234 N. W. 2d 212 (1975). The questions of alimony and division of property may be considered together when a marriage is dissolved. Grummert v. Grummert, 195 Neb. 148, 237 N. W. 2d 126 (1975). In considering these questions, the court shall have regard for such factors as the circumstances of the parties, the duration of the marriage, the history of the contributions to the marriage by each party, and the ability of the supported party to engage in gainful employment. § 42-365, R. S. Supp., 1976; Gregg v. Gregg, 193 Neb. 811, 229 N. W. 2d 546 (1975).

We believe that the issues of alimony and property settlement in this case can best be resolved by granting Eugene the house and household goods outright, and by ordering a property settlement which gives Patricia one-half of the equity in those items. Under this arrangement, Patricia is entitled to $6,000 on the house and to $550 on the household goods, the value

of these items having been established by evidence at the trial. The payment of the property settlement, as in the case of alimony payments, shall be made over a 5-year period in the same manner as set forth for alimony payments by the District Court. Payment in this manner allows the husband the means to pay the wife without selling property, an approach approved in prior cases. See Olson v. Olson, 195 Neb. 8, 236 N. W. 2d 618 (1975). We also reduce the award of alimony to $2,500, payable over 5 years in the manner set forth by the District Court. The sum total of the alimony and property settlement will then be $9,050, which will require Eugene to pay Patricia approximately $150 per month for the next 5 years. We find this to be a reasonable and fair amount, taking into account the circumstances of the parties and the history of their marriage. We note that under this arrangement Patricia will receive one-half the value of the house, although Eugene will have the burden of paying the outstanding $3,900 balance due on the house.

In awarding custody of Vickie to Eugene, we also grant reasonable visitation rights to Patricia as to both the minor children. We do not modify the provisions of the divorce decree relative to payment of attorney's fees and costs, nor the provisions relative to division of property of the parties other than the house and household goods.

We affirm the decree of the District Court as modified above.

AFFIRMED AS MODIFIED.