In re the MARRIAGE OF Randy Lee GONZALES and Eunice Louise Gonzales.

Upon the Petition of Randy Lee Gonzales, Petitioner-Appellant,

and Concerning

Eunice Louise Gonzales, Respondent-Appellee.

No. 84–1157.

Court of Appeals of Iowa.

June 25, 1985.

R.L. Van Veldhuizen, Oelwein, for petitioner-appellant.

Mark D. Buchheit, West Union, for respondent-appellee.

Considered by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

OXBERGER, Chief Judge.

The trial court below granted the respondent-mother's request to modify the custodial award of the parties' divorce decree. We disagree with the trial court that the mother has sustained her burden of proof and reverse.

This unpleasant fact situation demonstrates that the children of the divorced parties pay the price when the tug-of-war over custody becomes fierce. The parties,

Randy and Eunice Gonzales, have two sons; David, born June 1975; and Keven, born July 18, 1978. In December 1980 Eunice left the family home in Oelwein for California. The facts concerning the circumstances surrounding her departure are in dispute. Randy says she left with both children while the couple were having marital difficulties and he was recovering from health problems. Eunice claims she and the boys were thrown out by Randy because he had a seizure after getting out of the hospital and "didn't want the kids to see him like that." Randy denies this. Randy filed for dissolution of marriage on March 27, 1981. Notice was attempted as required by Iowa Code § 598A.5(3) (1985). Randy says he talked with Eunice on the phone several times regarding the marriage dissolution, and saw her once in California where they again discussed the proceedings. Eunice did not appear and claims she never received the notice. The court awarded custody of both children to Randy. Randy traveled to California where he picked up David at the school he was attending. He also tried to take Keven, but was unsuccessful. The record is clear that since this time Eunice has prevented Randy from knowing his whereabouts and has prevented Keven from seeing his father. Randy and Keven have not seen each other since May 1981.

In October 1983 Eunice filed a petition to modify the decree and the proceedings were transferred to Iowa. The court granted modification and awarded custody of Keven to Eunice. Randy has appealed.

The scope of our review is de novo. Iowa R.App.P. 4.

Eunice claims she did not receive notice of the dissolution of marriage but we agree with the trial court's fact finding that her testimony on this point is not credible. The court apparently found credible the testimony of Randy's mother, who was present when Randy talked with Eunice on the phone regarding the conversations. We also agree with the trial court that Eunice was not kicked out of the house, but left for California on her own. Although Eun-

ice claims she had no money, she purchased a car when she arrived in California. The record is clear that Eunice purposefully concealed Keven's location from Randy, although he had legal custody, saying she was afraid after he took David he would also take Keven. She never revealed her address or phone, made phone calls to her other son at holidays and birthdays by placing collect calls, and sent packages from Oregon. Her justification is that, "I have kind of made my little world around my son Keven because he is about all I got." Respondent again repeats in her brief that with the divorce she was "bilked" out of everything and, "Actually all that was left for Appellee was Keven, this was all she was able to salvage out of this marriage and Appellant was about to attempt to take him."

Randy maintained the same address he had since the dissolution and the same phone number. The only evidence that the father has prevented David from seeing his mother is an exchange between the two when Randy told Eunice he would let her see David if he could see Keven.

While Keven has been gone, Randy has made numerous attempts to find the child. He joined a national missing children's organization, sent reward posters with pictures to various places in Oregon and California, sent letters to county clerks in Oregon and California to attempt to find Eunice's name since she had remarried, sent letters to various schools in both states, obtained counsel in both states, and traced packages sent to him.

The record shows that David has thrived while in Randy's care. His high test scores were submitted to the court, and it was also shown David is involved in a program for gifted children. He has received awards in several school subjects. Randy is the president of the school's parent-teacher organization. Randy's mother also indicated Randy cleans, cooks, and otherwise cares for David. There was little evidence of Keven's experiences with Eunice other than he eats well.

In determining whether custody should be modified, the parent insisting upon the modification must show that the circumstances of the parties have substantially changed and that the circumstances of the change were not within the contemplation of the court at the time the original decree was entered. *In re Marriage of Morton*, 244 N.W.2d 819, 821 (Iowa 1976). The parent seeking custody must also show not just an equal parenting ability, but a superior claim. *Id.* The best interests of the child prevail. Iowa R.App.P. 14(f)(15).

The substantial change in circumstances which has occurred here is Keven's four-year absence from his father. We are not convinced such an absence was not within the contemplation of the court when the decree was entered. The court was informed that Eunice was in California with both boys and certainly would have recognized it might be a difficult process to return them to Iowa.

In addition, we are not convinced Eunice has sustained her burden to show she has superior parenting abilities.

We have frequently stated that custody is not an award or punishment to the parents. *Spotts v. Spotts*, 197 N.W.2d 370, 372 (Iowa 1972). However, a parent's conduct in depriving the other parent of contact with the child "is a most serious reflection on (that parent's) capacity to retain custody." *Id.* A parent's interference in this area may warrant awarding sole custody to the other parent. Iowa Code § 598.-41(1) (1985); *In re Marriage of Bolin*, 336 N.W.2d 441, 442, 446 (Iowa 1983); *In re Marriage of Burham*, 283 N.W.2d 269, 276 (Iowa 1979).

We have considerable information regarding David's good progress while in Randy's care. We know little of Keven's activities while in California. This does not carry the burden of respondent.

The court, instead, appeared to base its decision solely on the fact that Keven had not seen his father in three years at the time of the modification request. What the court seems to imply is that it would be

difficult for the boy to make the transition to the home of his father and brother after the long absence. While considering the best interests of the child, however, we are also to consider not just the short-range interests of the boy, but his long-range interests as well. *In re Marriage of Winter*, 223 N.W.2d 165, 166 (Iowa 1974).

We recognize precedent is of little value in such cases, but find instructive the principles set out at *Maikos v. Maikos*, 260 Iowa 382, 147 N.W.2d 897, (Iowa 1967). There, the mother of the children sought modification of the award of custody to the father after she had taken the children from the father. *Id.* at 389, 147 N.W.2d at 882. The court was also faced with the dilema of the children's long absence from the father, and stated:

> Perhaps the most perplexing problem before us in this troublesome case is the period of time these children have now been physically absent from appellant's home. Over two years have passed since they were wrongfully taken from his home and have been physically present in appellee's home. It is unfortunate that they must be moved again. However, it is our feeling that these periods of delay are not to be charged to appellant who resides in Connecticut. He promptly made a good faith, although fruitless, effort to recover possession of the children, but the court rejected his plea at that time. Under these conditions the lapse of time should not operate to deprive him of the custodial right and privilege given him by the original trial court. While the paramount question is not the rights of either parent, and frequent shifting of the children from one home to another is abhored, when we taken into consideration what is right and just under the revealed circumstances leading up to the appellee's physical possession of them, we conclude the children's best interest will be served by rejecting any change in their legal custody at this time.

*Id.* at 393–93, 147 N.W.2d at 885. We also believe here the absence from the father should not be charged to him. Randy made considerable, but fruitless efforts to find his other son. We agree that Keven's best interests are served by keeping his custody as it was originally placed, with his father, who has shown good parenting abilities with David and has shown his concern for Keven with his extensive efforts to find him. We note Keven will benefit from knowing his brother, and do not separate siblings unless there are compelling reasons to the contrary. *In re Marriage of Jones*, 309 N.W.2d 457, 461 (Iowa 1981).

We find that respondent has not carried her burden to show the circumstances which have changed were not within the contemplation of the court and that her parenting skills are superior. The circumstances show the best interests of the child will be served by denying the request to modify custody.

Respondent has also requested attorneys fees in district court and on appeal. We consider the factors regarding an award of attorneys fees in district court set out at *Locke v. Locke*, 263 N.W.2d 694, 696 (Iowa 1978) and factors for an award of appellate attorneys fees found at *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa Ct.App. 1981), and hold respondent shall pay her own attorneys fees in district court and on appeal.

REVERSED.