Michelle A. ANDERSEN, Plaintiff and Appellee,

v.

Terrence L. ANDERSEN, Defendant and Appellant.

No. 15160.

Supreme Court of South Dakota.

Considered on Briefs May 22, 1986.

Decided Jan. 14, 1987.

Bruce Gering, Viborg, for plaintiff and appellee.

R.L. Ericsson of Ericsson, Ericsson & Leibel, Madison, for defendant and appellant.

MORGAN, Justice.

Defendant, Terrence L. Andersen (Terry), appeals from an order of the trial court modifying the original divorce decree by awarding custody of his and his ex-wife's two youngest children to plaintiff, Michelle A. Andersen (Shelly). We reverse.

In June of 1983, Shelly and Terry were divorced. At the time of the entry of the judgment and decree of divorce, Terry was awarded custody of all five of the children born of the marriage who then ranged in age from one year, ten months to ten years, eight months. Regarding this custody award, the trial court made the following finding of fact: "Both parties hereto are loving and caring parents. However, at this time, Plaintiff mother is not ready to have the custody of the children because of her transient lifestyle and male companion, all of which fail to provide a stable, wholesome and nourishing environment for the minor children." As a result of this finding of fact, the trial court made the following conclusions of law: "Defendant [Terry] is a fit and proper person to have custody and control of the minor children.... The defendant shall have custody of all five of the minor children, subject to reasonable visitation rights by the Plaintiff."

Following the divorce, Shelly and a male companion moved to Montana and subsequently were married. Terry remained in Brookings with the children. In 1984, Shelly and her new husband moved back to South Dakota in order to be closer to her children and his children from a previous marriage. At this time also, Terry became engaged to marry another woman and moved his family from Brookings to Madison. Following these events, Shelly applied for a modification of child custody based upon a change of circumstances.

Following hearing, the trial court in its memorandum decision, which was incorporated in its findings of fact and conclusions of law by reference, held that there had been a substantial change in circumstances since the entry of the decree of divorce. The trial court found that Shelly remarried, obtained employment, and appeared to be in a fairly stable economic situation. The trial court also found that Terry moved his family to Madison and was engaged to marry another woman. In its memorandum decision, the trial court stated:

> This decision of the Court is not intended to suggest that the defendant [Terry] has done a poor job of caring for the children during the past few months. On the other hand, it was not the intent of this Court to determine at the time of the divorce that the plaintiff [Shelly] was an improper person to have the custody of the children. The custody determination was based on the fact that the plaintiff did not have a stable situation which would be conducive for the proper rearing of the children. She did not have a job sufficient to establish a stable economic situation and the relationship with the person who is now her husband, did not provide a proper social or moral environment for the rearing of children.

Following this, the trial court entered its order changing custody of the two youngest children aged four years and five years, eight months to Shelly and custody of the three older children remained in Terry. It is from this order that Terry appeals.

■ The trial court is vested with broad discretion in deciding questions of child custody modification and the court's decision will be reversed only upon a clear showing of an abuse of that discretion. *Menning v. Menning,* 272 N.W.2d 828 (S.D.1978). The seminal case on the burden of proof and the modification of a custody award is *Masek v. Masek,* 90 S.D. 1, 237 N.W.2d 432 (1976). In *Masek,* this court stated:

> To state the rule we have adopted in change of custody cases, the parent seeking modification of custodial rights has the burden of proving (1) that there has been a substantial and material change of circumstances since the decree of divorce was entered, and (2) that the welfare and best interests of the children require the modification being sought. Either factor standing alone will not justify a change of custody—both must be present. This is a heavy burden, but the courts, the parties and especially the children must be protected from endless and vexatious litigation and the resulting uncertainty flowing therefrom.

90 S.D. at 6, 237 N.W.2d at 434. *See Powell v. Powell,* 336 N.W.2d 166 (S.D. 1983); *Hanks v. Hanks,* 334 N.W.2d 856 (S.D.1983).

■ The trial court found that there has been a substantial and material change of circumstances since the decree of divorce was entered. While we do not conclude that this finding was clearly erroneous, there does appear to be a patent inconsistency in that the trial court viewed in a positive light Shelly's marriage to the paramour whose relationship caused the divorce, while viewing the pending marriage to Terry in a negative manner. In any event it does not appear in the record that

the best interests of the children were considered when breaking up the siblings as a unit. The general rule is that the best interests and welfare of the children are promoted if they are kept together in one home.* There was no evidence in the record to show that the two youngest children had any problems caused by living with a new stepmother. Neither does the record reflect that father in any way inadequately cared for the children. There were, of course, allegations of inadequate care on both sides. However, in its findings, the trial court did not find this to be the case. In essence, the trial court based its modification order solely upon Shelly's new-found maturity. The trial court made no findings of fact to support its conclusion that the two younger children should be uprooted and the sibling unit destroyed.

■ We find that Shelly has not met her burden by a preponderance of the evidence in proving both factors needed to modify a custody order. This is exactly the type of situation which the court cautioned against in *Masek, supra.*

> In borderline cases, as this was, we recognize that the parent not having custody might be tempted to relitigate the custody issue in the hope that a change in the composition of the Supreme Court might change its opinion. But this would not be fair either to the parties or the children, and we will be especially vigilant to avoid rewarding persistence in this type of case.

90 S.D. at 6, 237 N.W.2d at 434.

In summary, we hold that the trial court abused its discretion in awarding custody of the two youngest children to Shelly. The record fails to establish that the welfare and best interests of the children re-

---

* The following cases support the strong public policy toward preservation of the sibling relationship. *In Re Marriage of Gonzales,* 373 N.W.2d 152, 155 (Iowa App.1985) (siblings benefit from knowing one another, thus, courts do not "[s]eparate siblings unless there are compelling reasons to the contrary"); *In Re Marriage of Little,* 26 Wash.App. 814, 818, 614 P.2d 240, 243 (1980) (reversible error to split custody of four minor children where they were integrated into father's home and were invited to rely upon his stabilizing influences and extended family); *Andera v. Andera,* 277 N.W.2d 725 (S.D.1979); *Boroff v. Boroff,* 197 Neb. 641, 648–49, 250 N.W.2d 613, 617–18 (1977) (reversible error to separate children where both parents were fit); *Ebert v. Ebert,* 38 N.Y.2d 700, 382 N.Y.S.2d 472, 346 N.E.2d 240 (1976); 24 Am.Jur.2d *Divorce and Separation* § 991 (1983).

quire the implementation of the extreme remedy ordered by the trial court.

We reverse.

HENDERSON, J., and FOSHEIM, Retired Justice, concur.

WUEST, C.J., and SABERS, J., dissent.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

SABERS, Justice (dissenting).

I dissent for the following reasons:

### Facts:

Following the divorce, Mr. Andersen continued to live in a trailer house in Brookings, South Dakota until he moved to Madison, South Dakota on June 21, 1985. As a result of this move, the four older children had to leave their school in Brookings and transfer to a school in Madison. Mr. Andersen's subsequent marriage to a woman in Madison who had custody of two children of her own resulted in a complete change of child care from Mr. Andersen's sister, (who had lived with him and the children), to his new wife and a day-care center.

The mother, Michelle Andersen, now Mrs. Koenders, and her husband were both hired as psychiatric aids at the Human Services Center in Yankton, South Dakota on December 3, 1984. Since that time they have received merit raises in their wages based on their favorable monthly performance evaluations.

Mr. and Mrs. Koenders work the same shift at the hospital (10 p.m.—7 a.m.) and have the same days off. They work six days on and two off, and every fourth week they have two three-day weekends back to back. Under this schedule, Mr. and Mrs. Koenders have a babysitter who stays at their home while they are working and their children are sleeping. During the day while the children are awake, either Mr. or Mrs. Koenders stays awake and spends time with them. Additionally, both sets of the children's grandparents live near Viborg, and the maternal grandmother has volunteered to babysit whenever she is needed.

Upon moving back to Viborg, Mr. and Mrs. Koenders entered into a rent-to-own agreement with Mrs. Koenders' mother for the eventual purchase of a two-story, three-bedroom home in Viborg. The home is well cared for and Mrs. Koenders has developed the yard with flowers and a vegetable garden.

Mrs. Koenders' children interact very well with Mr. Koenders. He treats them like a father and has developed a very smooth and loving relationship with them. All of the children have adjusted to their marriage and Mr. Koenders spends much of his time working with them.

During visitation prior to this contested decision, Mrs. Koenders found that the children were dirty and that the dirt was crusted in their ears and around their ankles. It was also evident that they did not practice regular dental hygiene in that their teeth were dirty and Amber had extensive tooth decay. Further, their clothes were tattered and they wore shoes with holes in them. Mr. and Mrs. Koenders and her mother bought clothes and shoes for the children on several occasions.

After establishing a stable home life in Viborg, Mrs. Koenders petitioned the circuit court to modify its prior judgment by granting custody of all five children to her. The matter was heard by the trial court on July 26, 1985. On August 30, 1985, the court ordered that Mr. Andersen retain custody of the three older children and that Mrs. Koenders receive custody of the two youngest girls, Amber and Terra. The trial court also ordered the parties to arrange a liberal visitation schedule which they did in October, 1985. Mr. Andersen now appeals this order.

### Claims of the Parties:

Mrs. Koenders contends that the changes which have taken place in her life and in

her ex-husband's life were substantial in regard to the children's welfare. Therefore, she claims that a reconsideration of the children's custody was justified inasmuch as ample testimony was presented to judicially determine that the welfare and best interests of the two young girls would be best served by placing them in their mother's custody. Mrs. Koenders also contends that the trial court's original finding was not that she was unfit, nor that she was an improper parent, but only that the best interests of the children would be served by placing them with Mr. Andersen whose family life was more stable at the time of the divorce action.

## Scope of Review:

SDCL 15-6-52(a) provides that "findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." In *Weygand v. Weygand,* 68 S.D. 1, 3, 297 N.W. 689, 690 (1941), we wrote, "[t]he trial court has a wide range of discretion in awarding the custody of children in a decree of divorce and this discretion will not be disturbed except where there has clearly been an abuse thereof." *See also: Jasper v. Jasper,* 351 N.W.2d 114, 118 (S.D.1984). " '[T]he credibility of the witnesses and weight to be accorded their testimony is for the trial court and we accept that version of the evidence including any reasonable inferences therefrom which are favorable to the trial court's determination.' " *Schutterle v. Schutterle,* 260 N.W.2d 341, 347 (S.D.1977), *quoting Larson v. Syverson,* 84 S.D. 31, 33, 166 N.W.2d 424, 425 (1969).

1. SUBSTANTIAL AND MATERIAL CHANGES HAVE TAKEN PLACE IN THE LIVES OF THE PARTIES SINCE THE DECREE OF DIVORCE IN REGARD TO THE WELFARE OF THE CHILDREN

Although Mr. Andersen had kept the same home and residence for a period of approximately two years after the divorce, at the time of the modification hearing, he was planning to marry a woman who had custody of two children of her own and intended to move to a different town. Mr. Andersen would like to brush these changes aside as inconsequential, but the intent of the law requires that they be considered in light of the best interests and welfare of the children whom the laws were designed to protect. *See: Flint v. Flint,* 334 N.W.2d 680, 681 (S.D.1983); *Haak v. Haak,* 323 N.W.2d 128, 130 (S.D. 1982). In the eyes of a child, especially a four-year old and a six-year old, acquiring a new step-mother with a step-sister and a step-brother, moving to a different town, and leaving friends and playmates behind are all substantial and material events that affect their welfare.

Since her divorce, Mrs. Koenders has remarried, settled into a new home, and has performed in an outstanding manner in a responsible, professional job. Mrs. Koenders has cured all the deficiencies which caused the trial court to find that she was not ready to have custody of her children at the time of the divorce.

2. THE WELFARE AND BEST INTERESTS OF THE TWO PRESCHOOL GIRLS WOULD BEST BE SERVED BY PLACING THEM IN THE CUSTODY OF THEIR MOTHER WITH LIBERAL VISITATION RIGHTS

In any child custody determination, the court must act with the best interests of the child in mind. SDCL 30-27-19. In doing what it considers best for each child, a court may divide the custody of several children between the parents for compelling reasons. *See: Grace v. Grace,* 221 Neb. 695, 380 N.W.2d 280, 285-286 (Neb. 1986); *In Re Marriage of Gonzales,* 373 N.W.2d 152, 155 (Iowa 1985); *Braeman v. Braeman,* 192 Neb. 510, 222 N.W.2d 811, 814 (Neb.1974). In the present case, sufficient circumstances existed which lead the trial court to believe that the best interests of the children would be served by placing Amber and Terra with their mother.

Even though the South Dakota Legislature did away with the "tender years doc-

trine" of SDCL 30–27–19 in 1979, it did not change the basic sociological structure of the American family. Although the trend is away from strict mother-father roles, there remains a widely held belief that young children should be with their mother. *See generally: Annot.,* 70 A.L.R.3d 262 (1976). There are still strong social reasons for giving custody to the mother when it is shown that she is a fit and capable person who is able to care for the children. Here, the evidence shows a substantial change of circumstances since the time of the divorce. The record indicates that Mrs. Koenders now has a settled home life, steady professional employment, and has made adequate arrangements for the children's care while she is working. She is a fit, capable, and loving mother, and the trial court so found.

Testimony was presented to the trial court which suggested that the children were being neglected to a certain extent while in their father's custody. While none of these conditions are serious examples of abuse or neglect, they may serve as indicators of other more serious conditions. If these conditions existed when the five children lived with their father and had a full-time live-in babysitter, (his sister), they may be worse after his remarriage and the addition of two more children to the family. It is logical for the trial court, after seeing the demeanor of the witnesses and considering all the circumstances of this case, to conclude that it would be in Amber and Terra's best interests to be placed in their mother's custody where they would be assured of receiving all of the love and attention that was rightfully theirs.

Of course, such a separation would deprive them of some sibling association with their older brothers and sister. But this loss was at least partially compensated for by the modified stipulation and order for visitation. The stipulation was based on the prior agreement of November 1984, which was approved by the court subsequent to this contested decision.[1]

Although these reasons are not, by themselves, overwhelming, they are, when taken together, compelling; and the trial court so found. The court had a sufficient evidentiary basis from which to conclude that the best interests of these two young girls would be served by placing them with their mother, and that any loss of sibling association could be minimized by an effective and liberal visitation schedule. The record shows that Mrs. Koenders sustained her burden of proving both a substantial change of circumstances, and that the children's welfare and best interests required the change of custody. *Flint,* 334 N.W.2d at 681.

The welfare of the children is the paramount consideration that controls their disposition whenever the question of custody arises. *Larson v. Larson,* 70 S.D. 178, 179, 16 N.W.2d 307 (1944). "In resolving this delicate issue, the trial court has been aided by the impressions [it] has been able to form of each of the individuals concerned. Sound reason suggests that we should not interfere in the absence of a clear and abiding conviction that the broad discretion vested in that court has been abused." *Id.* Here, the trial judge was in a much better position than is this court, who sees only the written record, to choose the environment most advantageous to the children's welfare. SDCL 15–6–52(a). Accordingly, there was no abuse of judicial discretion in this case and the trial court decision should be affirmed, not reversed by this court.

I am authorized to state that WUEST, C.J., joins in this dissent.

---

1. Under this order, the children are together at *either their mother's or father's house* on Easter, Memorial Day, Labor Day, Thanksgiving and Christmas holidays. Further, the children are all together at their father's house on the second weekend of every school year month and they are together at their mother's house on the fourth weekend of every school year month. In addition, Terra may spend one week each month in her father's home until she begins kindergarten. During the summer months the children are together two weeks of each month at their father's house and two weeks of each month at their mother's home. Thus, out of 365 days in 1986, the children will spend 154 days together as a sibling unit.