# IN THE COURT OF APPEALS OF IOWA

No. 22-2108
Filed July 13, 2023

**KOSSI M. EVIGLO,**
Petitioner-Appellee,

**vs.**

**AMON ADJO ANNE BEDIA,**
Respondent-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary, Judge.

Amon Bedia appeals an order granting physical care of three shared children to Kossi Eviglo. **AFFIRMED.**

John S. Moeller of John S. Moeller, P.C., Sioux City, for appellant.

Nick E. Wingert, P.C. of Mayne, Hindman, Frey, Parry & Wingert, Sioux City, for appellee.

Considered by Chicchelly, P.J., Buller, J., and Mullins, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**BULLER, Judge.**

Amon Bedia appeals an order granting physical care of three shared children to Kossi Eviglo. Amon claims physical care should have been awarded to her, even though she took the children and fled the state without warning or notice to Kossi. We find the record evidence supports the district court awarding physical care to Kossi and affirm. We also deny Kossi's request for appellate attorney fees.

### I.      Background Facts and Proceedings

Kossi and Amon met in the 1990s in Benin, a nation in West Africa. Both separately came to the United States, where they reconnected and began dating around 2010. Amon eventually relocated to Sioux City to be with Kossi. Kossi and Amon never married, but they share three children (born in 2013, 2015, and 2018).

Kossi works as a programmer for an industrial company in Sioux City that gives him significant flexibility to handle child-related matters during the day. Kossi's extended family, including his sister and mother, help with child care. Kossi's home in Sioux City, which he owns without a mortgage, is appropriate for Kossi and the children in terms of size and bedrooms. Kossi is also an usher with a local Methodist church, which the children attend.

Amon was not employed as of trial, and she resides in Greensboro, North Carolina, with or near her mother. While she lived in Sioux City, Amon worked full-time for a dogfood manufacturing company and part-time at a group home for disabled children before that.

Amon and Kossi's two older children attend schools in the Sioux City Community School District, where they are doing "very well academically and

socially." The children regularly go to the gym and play sports. The district court found the children had a strong connection to Sioux City based on ties with their friends, associates, family, church, and schooling in the area. Two of the children had lived in Sioux City their whole life, and the oldest child lived in Sioux City for all but a few months.

While they were involved in a relationship and lived together, Kossi and Amon divided parenting duties. They had different work schedules, and each did more child-care tasks while the other was working. Both attended school conferences, but Amon was primarily responsible for doctor and dentist appointments. Kossi would spend time with the children at the park, playing sports, or doing other activities. Kossi was the primary breadwinner, and Amon worked fewer hours to provide child care. The only non-party witness at trial, one of Amon's friends, testified that Kossi and Amon were both good parents who were involved in the children's lives.

Disagreements over finances propelled the parties toward separation in the early summer of 2021. Kossi and Amon sought guidance from leaders in the local African community to mediate or resolve their disputes, but these efforts were unsuccessful. In June 2021, Amon took the children and left Sioux City without informing Kossi or telling him where they were going. In Kossi's words, "On June 10 I just went to work and came back and she pack everything and she left." Kossi contacted the police and hired a private investigator. He eventually learned that Amon had taken the children to her mother's home in North Carolina, and a North Carolina sheriff's office confirmed the children were there and safe. Kossi then filed the petition giving rise to this appeal, and, as a result, Amon would not allow

Kossi to speak with the children for "months," which required additional court intervention.

Kossi testified, and Amon confirmed, that they never had any discussions that led him to think she might abscond with the children. In hindsight, Kossi recalled that, one year prior, Amon had come to him with paperwork for obtaining the children's passports, but she refused to agree in writing that she would return to the United States if she left with the children. Based on Amon's refusal to agree to return, Kossi did not sign the passport paperwork.

The district court awarded temporary custody of the children to Kossi, with parenting time for Amon. The parties eventually agreed that Amon could have the children for the summer of 2022, in light of Amon's significant travel expenses (which otherwise rendered every-other-weekend visitation impractical). Kossi also allowed Amon significant visitation outside what was required by the court schedule. In his words, "any time she decide to come and visit them, I just allow her." Kossi facilitated once- or twice-daily phone calls between the children and Amon when they were not in her care, and he ensured she received report cards and other information about the children's activities. At some point while the temporary-matters order was in effect, Amon stopped paying child support and fell more than $6000 in arrears.

After trial, the court ordered joint legal custody and awarded physical care of the children to Kossi. Amon was granted significant parenting time, including alternating weekends and the entire summer (save two weeks of vacation reserved to Kossi).

Amon appeals, urging that she should have been awarded physical care of the children. She does not seek joint physical care.

## II.     Standard of Review

We review child custody orders de novo. *McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010). We ordinarily "give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them." *Id.*

## III.     Discussion

"The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Although this action is governed by Iowa Code chapter 600B (2021), we look to section 598.41 for guidance. *See* Iowa Code § 600B.40(1) (providing "section 598.41 shall apply" to chapter 600B proceedings). In section 598.41, the General Assembly set forth a series of nonexclusive factors to guide our consideration. Our case law sets forth similar factors. *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). While we afford some weight to the parent who historically acted as the primary caregiver, this factor is not dispositive. *See Flick v. Stoneburner*, No. 15-1930, 2016 WL 2743449, at *2 (Iowa Ct. App. May 11, 2016). Our overriding consideration "is the best interests of the child." Iowa R. App. P. 6.904(3)(o).

We agree with and affirm the district court's determination that physical care should be placed with Kossi rather than Amon. Like the district court, we place particular emphasis on stability in the Sioux City area—including connections to

school, church, family, and friends—and the impact this will have on the children's well-being. Although not discussed at length by the district court, we also afford significant weight to the dynamics and history between Kossi and Amon, recognizing that Amon's conduct placed her best interests above the children's and that her attempts to interfere with Kossi's parental rights would likely continue unabated if she were awarded physical care.

Kossi worked to facilitate Amon's continued relationship with the children, despite their history. Kossi ensured that Amon was listed as an additional emergency contact for the children's school, even though Amon did not do the same when attempting to enroll them in North Carolina schools. Kossi provided Amon with visitation beyond her parenting time required by the temporary order, and he supported her relationship with the children. Kossi also offered to share physical care and pay child support if Amon were willing to remain in the Sioux City area, but Amon refused. These actions reflect Kossi's recognition that he must act in the best interests of the children, even if it is to his disadvantage or against his preferences.

On the other side of the ledger, we have deep concerns about whether Amon could provide for the children or facilitate their relationship with Kossi if she were awarded physical care. Our most serious concern relates to Amon's past behavior interfering with Kossi's relationship with the children, including her secretly absconding with them to North Carolina. This conduct is even more egregious considering the dispute over the passport and Amon's unwillingness to commit to not fleeing the country with children in tow. Although Amon had the opportunity to take responsibility for these acts at trial, she instead minimized her

conduct and disputed just how difficult it was for Kossi to locate her. She also admitted on cross-examination that taking the children away from Sioux City and away from their father was not in their best interests. As we have said before, "a parent's conduct in depriving the other parent of contact with the child is a most serious reflection on that parent's capacity to retain custody. A parent's interference in this area may warrant awarding sole custody to the other parent." *In re Marriage of Gonzales*, 373 N.W.2d 152, 154 (Iowa Ct. App. 1985) (internal citations, alterations, and quotation marks omitted). Overall, Amon's past conduct convinces us, at minimum, that she would likely undermine Kossi's relationship with the children in the future, if not work to eliminate the relationship outright.

In her testimony at trial and in her appellate brief, Amon attempted to spin the involvement of Kossi's extended family in the Sioux City area as a negative. In our reading of the record, we find Kossi's proximity to family provides a net benefit to the children. Along with the social connections the children have with Sioux City churches and schools, connections with family will facilitate the children's social and emotional growth, and the extended family can provide child-care assistance as needed. All working single parents require assistance with child care, and we do not hold Kossi's reliance on his family against him. *See In re Marriage of Welbes*, 327 N.W.2d 756, 758 (Iowa 1982) (approving of a physical-care arrangement that involved assistance from family members); *In re Purscell*, 544 N.W.2d 466, 468 (Iowa Ct. App. 1995) (same). We also note that, while both Kossi and Amon were living in Sioux City together, they relied on Kossi's family for help with child care; in other words, the involvement of Kossi's family is a continuation, rather than a change, for the children.

In resolving this appeal, we recognize Kossi makes an extended argument in his brief about Amon's truthfulness, laying out significant evidence that suggests Amon lied about her age in sworn testimony.  Because we affirm placing physical care with Kossi based on the other evidence and arguments, we elect to not engage with the dispute over Amon's age or any issues that analysis may entail.

Last, Kossi requests Amon pay his appellate attorney fees.  Given Amon's lack of financial resources and concomitant inability to pay, we exercise our discretion to deny the request for fees.  *See In re Marriage of Buttrey*, 538 N.W.2d 322, 324 (Iowa Ct. App. 1995).

## IV.    Disposition

We affirm the placement of physical care with Kossi and deny Kossi's request for attorney fees.

**AFFIRMED.**