Joanne C. COLE, Plaintiff
and Appellee,

v.

Rolfe H. COLE, Defendant
and Appellant.

No. 14911.

Supreme Court of South Dakota.

Considered on Briefs Jan. 14, 1986.

Decided March 12, 1986.

Richard A. Johnson, Pruitt, Matthews & Muilenburg, Sioux Falls, for plaintiff and appellee.

Laird Rasmussen, Moore, Rasmussen, Sabers & Kading, Sioux Falls, for defendant and appellant.

HERTZ, Acting Justice.

Rolfe H. Cole, Jr. (Rolfe), the appellant herein, appeals from a judgment and decree of divorce awarded to Joanne C. Cole (Joanne), the appellee. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## STATEMENT OF FACTS

Rolfe and Joanne Cole were married on December 1, 1961, in Centerville, South Dakota. One child was born of this union, Timothy, who, at all times pertinent to this action, had attained the age of majority. At the time of trial, Rolfe was 44, and Joanne was 45 years of age. Both parties enjoy good health.

Neither one of the Coles brought any discernable assets into the marriage. As such, both parties agree that whatever they acquired during their 24 years of marriage was as a result of their joint efforts.

Except for the seven year period between 1965 and 1972 when she remained at home to care for Timothy, Joanne has always worked on a full- or part-time basis. She is currently a secretary at Western Bank in Sioux Falls, South Dakota and earns approximately $733.07 take-home pay per month. Rolfe's present income from the Dakota Livestock Company is $20,150 per year, or approximately $1,250 take-home pay per month. Additionally, Rolfe is employed on a part-time basis at the Westward Ho Country Club from which he earns $3,524.02 per year. The trial court made a finding that Rolfe's net monthly income totals approximately $1,500.

The parties' divisible assets included a house in Sioux Falls, which is presently valued at $69,000 and subject to a first mortgage in the amount of $35,037.46. The trial court awarded Joanne the marital residence with its attendant indebtedness.

The Coles also jointly owned a farm consisting of 160 acres in Lincoln County, South Dakota, which they purchased on a contract for deed in 1975. The down payment of $28,800 was paid by Rolfe's father, Rolfe Hi Cole, Sr. (Rolfe, Sr.). Although there is no written evidence characterizing this money as a loan, Rolfe and his father insist that the down payment was not a gift and that the $28,800 debt which is owed to Rolfe, Sr., is expected to be paid in full plus 8% interest per annum. No principal or

interest payments had been made at the time of trial.

The Lincoln County property is leased to Rolfe's brother for farming purposes. The farm property was valued by Joanne's appraiser at $128,000, whereas Rolfe's appraiser valued it at $116,000. The trial court adopted Joanne's appraisal, and awarded the farm property to Rolfe subject to the balance on the contract for deed and the $28,800 indebtedness owed to Rolfe, Sr.

The trial court also ordered Rolfe to pay Joanne a lump sum payment of $20,000 as a further property settlement. Additionally, the trial court awarded Joanne $400 per month in the form of alimony until she remarries or dies.

According to the briefs and record herein, the Coles marital problems began in the early 1970's as a result of Rolfe's excessive drinking. He has since rectified this problem. Thereafter, the parties had trouble communicating. Joanne testified that Rolfe admitted to having an extra-marital affair in 1978, but he denied this allegation at trial.

It appears, however, that Rolfe's relationship with Connie Sweeter (Connie), a divorcee and neighbor of the Coles, has generated the most conflict between the parties. Both Rolfe and Connie testified that they were just good friends and not lovers.

However, the testimony of Joanne and another neighbor, Lola Heyer, depicted Rolfe's close association with Ms. Sweeter as something more than a friendship. They testified, respectively, that while the Coles were still living together, Rolfe spent many afternoons at Connie's home while Joanne was at work; that Rolfe did numerous household chores for Connie while neglecting the same ones at his own home; that Rolfe would ignore Joanne at neighborhood gatherings and spend all of his time with Connie; and that Rolfe often sided with Connie in arguments between she and Joanne, (inasmuch as they started out as good friends), and forced Joanne to apologize.

At this writing, Rolfe's relationship with Connie is still in existence. The record reflects that he often took Connie and her children out to various places. Ms. Sweeter testified, however, that she and Rolfe have only gone out alone together approximately four or five times. She also stated that Rolfe had purchased gifts for her upon occasion.

The Coles separated in May of 1984, and commencement of this action followed shortly thereafter. The issues herein will be separately stated and so treated.

I

WHETHER THE TRIAL COURT MADE AN EQUITABLE DIVISION OF THE MARITAL PROPERTY?

A divorce court must consider equity and the circumstances of the parties when it divides the marital property. SDCL 25–4–44. This court reviews a trial court's findings of fact under the "clearly erroneous" standard and will overturn a trial court's conclusions of law only when the trial court has erred as a matter of law. *Temple v. Temple*, 365 N.W.2d 561, 565 (S.D.1985).

Generally, fault will not be taken into account with regard to an award of property. SDCL 25–4–45.1. Thus, the principal factors to be considered in a division of property pursuant to divorce are: the length of the marriage; the value of the property; the age and health of the parties; their respective competency to earn a living; the contributions of each party to the accumulation of the property; and the income producing capacity of the parties' assets. *Clement v. Clement*, 292 N.W.2d 799 (S.D.1980).

The trial court has broad discretion with respect to property division, and its judgment will not be set aside unless it clearly appears that the trial court abused its discretion. *Temple*, 365 N.W.2d at 565. Although the trial court's discretion is broad, it is not uncontrolled, and must be soundly and substantially based upon the evidence. *Goehry v. Goehry*, 354 N.W.2d 192, 194 (S.D.1984). This court's review is limited

to a determination of whether there was an equitable property division. *Temple*, 365 N.W.2d at 565; *Krage v. Krage*, 329 N.W.2d 878 (S.D.1983).

With the foregoing principles in mind, we now turn to the distribution of marital assets in the case at bar. The trial court divided the marital property as follows:

| | Joanne | Rolfe |
|---|---|---|
| Farm Equity | – | $64,163.00 |
| Residence Equity | $33,963.00 | – |
| IRA | 1,319.45 | 17,304.66 |
| Automobile | 2,900.00 | – |
| Boat & Trailer | – | 1,500.00 |
| Checking Account | 200.00 | 1,500.00 |
| Joint Savings Account | 1,211.92 | – |
| Lump Sum Payment | 20,000.00 | – |
| Profit Sharing | 30.65 | – |
| Personal Property | 5,435.00 | 1,181.00 |
| TOTAL | $65,060.02 | $85,648.66 |

At the time of trial, the Coles had been married for 24 years. They are within one year of being the same age, and both enjoy good health. There is no dispute that each party contributed equally to the accumulation of marital property.

Each of the Coles is capable of earning a living and both of them are presently employed. However, Rolfe earns almost twice the salary per year at Dakota Livestock that Joanne earns as a secretary for Western Bank. If Rolfe elects to continue his part-time employment at the Westward Ho Country Club and that salary is added on to his full-time earnings, then he most certainly earns twice as much as Joanne does in one year.

Rolfe was awarded the farm property subject to the balance on the contract for deed and any indebtedness he may owe to his father for the down payment. Joanne was awarded the marital home which is subject to a first mortgage. The farm equity equals: $64,163.00, and the residence equity equals: $33,963.00.

■ A review of the trial court's property division indicates that it awarded Joanne a $20,000 lump sum payment as a further property settlement. Apparently this adjustment was made to balance the equities between the parties in relation to the real property, given the farm's ability to generate a profit. The family home is not income-producing property. As such, we cannot find that the trial court abused its discretion in awarding the lump sum payment.

■ Inasmuch as the distribution of assets set forth above indicates that Joanne received 43% of the net assets and Rolfe received 57%; and by applying the factors enunciated in *Clement, supra*, to the case at bar; we hold that the trial court made an equitable division of the marital property.

■ We note that Rolfe Cole attempted to characterize the down payment on the farm property as a loan. To that end, his father testified that he expected to be repaid in full and with 8% annual interest. However, there is no written documentation to support the appellant's claim. Furthermore, during the intervening ten years since the contract for deed was executed, Rolfe has never made a single interest or principal payment upon this "loan", nor has his father demanded as much. Rolfe, Sr. testified at trial that he was not "overly concerned" about when he got paid back. Therefore, regardless of Rolfe and his father's self-serving declarations to the contrary, and based on the evidence and record herein, we find no error by the trial court in declining to consider the accumulated interest on the alleged loan in making the division of property.

Finding no error as a matter of law, we accordingly affirm the trial court's division of property.

## II

### WHETHER THE TRIAL COURT'S $400 PER MONTH ALIMONY AWARD IS EXCESSIVE?

Not unlike the division of marital property, the trial court has broad discretion in determining an alimony award and this court will not set it aside unless there is an abuse of discretion. *Goehry, supra;*

*Krage, supra; Palmer v. Palmer,* 316 N.W.2d 631 (S.D.1982).

■ SDCL 25-4-41 provides for the award of alimony as the trial court may deem just having due regard to the circumstances of the parties. While SDCL 25-4-45.1 precludes the consideration of fault in a property division, fault is still considered in awarding alimony to either party. *Temple,* 365 N.W.2d at 568. Alimony awards are further based upon the respective financial conditions of the parties after the property division and the parties' standard of living. *Id.* Additionally, the trial court must consider the length of the marriage; the parties respective earning capacity; their age and health; and their social standing. *Id., Hanks v. Hanks,* 296 N.W.2d 523 (S.D.1980).

Except for the relative fault of the parties, and both their social standing and standard of living, the factors set forth above have been previously discussed under Issue I, *supra,* and we will not readdress them at this time. Nevertheless, we have given these factors due consideration in the analysis that follows.

■ With respect to the relative fault of the Coles in relation to the termination of their marriage, the record provides persuasive evidence that Rolfe's drinking, unwillingness to communicate, and his relationship with Connie Sweeter substantially contributed to the breakup of the marriage. We need not recite the litany of sorrows that face a middle-aged divorcee on a limited income and with meager job prospects in a society where youth and/or wealth is of premium importance. Suffice it to say, however, the record is replete with evidence illustrative of the fact that Joanne Cole gave 24 years of her life to a man who repaid her, in part, by establishing a relationship with her best friend. Indeed, we cannot find that the trial court erred when it deemed this factual backdrop appropriate for an award of alimony. However, fault is but one factor to be considered in determining alimony. Therefore, we further find that the trial court's award of $400 in alimony to Joanne until she remarries or dies, is excessive in light of all the circumstances which affect these parties.

Rolfe argues that the trial court abused its discretion when it determined his net monthly income as $1,500 by including the earnings from his part-time employment at the Westward Ho Country Club. He contends that this was merely a temporary situation which resulted from the fact that he needed the extra income to maintain both the family residence and his apartment during the Coles period of separation. Rolfe argues that there is no evidence to support the contention that the Westward Ho position will remain available, or that he ever intended to keep his job there beyond the finalization of this divorce action.

We agree, and thus remand the portion of the trial court's judgment pursuant to the alimony award. Assuming arguendo that Rolfe's net monthly take-home pay is derived from his job at Dakota Livestock only, then the trial court should have placed that figure at $1,250. The $400 per month alimony award would decrease Rolfe's take-home pay to approximately $850, while it would increase Joanne's net monthly income to approximately $1,133.07.

Moreover, the Coles relative financial position after the property division appears to indicate that Joanne may have more disposable cash resources available to her, especially in light of the $20,000 lump sum payment that we already affirmed Rolfe is obligated to pay her. Inasmuch as Rolfe testified that the farm property has historically operated at a loss, and based on the evidence relative to the fixed nature of Rolfe's assets and his net monthly income, we hold that the trial court abused its discretion in awarding $400 per month as alimony.

We, therefore, reverse the trial court's judgment as it pertains to alimony, and remand the issue of alimony to the trial court for further proceedings consistent with this opinion.

## III

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN

AWARDING JOANNE $500 IN ATTORNEY FEES?

The trial court made a finding that Joanne had incurred reasonable attorney fees and was financially unable to bear the total cost of such fees. It further found that she needed financial assistance due to her financial condition and status in life. As such, Rolfe was ordered to pay $500 toward Joanne's attorney fees.

The Judgment and Decree of Divorce was entered on March 5, 1985. On April 17, 1985, the trial court further ordered Rolfe to pay Joanne's attorney an additional $500 toward her appellate attorney fees. Inasmuch as the $500 represents only one third of her total appellate costs, Joanne now requests an additional $1,000 on this appeal.

SDCL 15–17–7 permits the award of attorney fees in divorce actions. As we stated in *Temple, supra,* each case rests upon its own facts, and the decision is within the trial court's sound discretion. On review, this court will examine the trial court's analysis of the following elements pertinent to fixing legal fees generally: (1) the amount and value of the property involved; (2) the intricacy and importance of the litigation; (3) the labor and time involved; (4) the skill required to draft pleadings and try the case; (5) the discovery procedures utilized; (6) the existence of complicated legal problems; (7) the time required; (8) whether briefs were required; and (9) whether an appeal to this court is involved. *Temple,* 365 N.W.2d at 569; *Lien v. Lien,* 278 N.W.2d 436 (S.D.1979); *Holforty v. Holforty,* 272 N.W.2d 810 (S.D. 1978).

As we wrote in *Goehry, supra,* the trial court should also consider "the property owned by each party, their relative incomes, whether the moving party's property is in fixed or liquid assets, and whether either party unreasonably increased the time spent on the case." *Goehry,* 354 N.W.2d at 195. *See also: Johnson v. Johnson,* 300 N.W.2d 865 (S.D.1980).

In the case at bar, we affirmed the trial court's division of the marital property which represents relatively equal amounts. Presently, the trial court's award of alimony is excessive and places Joanne on a better than equal footing in regard to net monthly income. As such, we have remanded this award to the trial court.

At trial, Joanne submitted an itemized statement as to what her attorney fees, tax, and costs were. This document reflects that her total attorney fees were $2,049.60, and such statement was admitted into evidence without objection. Rolfe testified that his total attorney fees would approximate $2,500. In comparing the two figures, we find that the trial court did not abuse its discretion in finding that Joanne's total fees were reasonable. Nor can we find any error in the trial court's award of $500 to Joanne for this appeal.

We, therefore, affirm the trial court's award of $500 in attorney fees, and $500 toward Joanne's appellate fees based on the record and evidence herein, and in light of the elements set forth in *Temple, supra.*

We next consider Joanne's request for an additional $1,000 in attorney fees pursuant to this appeal. Based upon all the circumstances which affect these parties, we would disallow this request in any event. However, this court's recent decision in *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D. 1985), provides a further basis for precluding it.

In *Malcolm,* the appellant asked this court to increase the trial court's award of attorney fees to include a reasonable sum associated with bringing the appeal. As such, we responded as follows:

Following the date of the remittitur in this action, we will not consider a request for attorney fees on appeal in domestic relations cases unless there is submitted to us a separate motion, accompanied by counsel's verified itemized statement of costs incurred and legal services rendered.

*Malcolm,* 365 N.W.2d at 866.

Not unlike the appellant in *Malcolm, supra,* we note that no separate motion for

attorney fees, nor an itemized statement in support thereof, has been filed by Joanne in connection with this appeal. Consequently, we have little upon which to base any award of appellate attorney fees. Thus, we deny the request for an additional $1,000 for appellate attorney fees. ·

We accordingly affirm the trial court's award of attorney fees in this case.

FOSHEIM, C.J., and MORGAN and WUEST, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (concurring in part; dissenting in part).

Although it is somewhat satisfactory to see the alimony award of $400.00 reversed in this case, I would totally reverse any award of alimony. This author's alimony views have been fully set forth in *Martin v. Martin*, 358 N.W.2d 793, 800 (S.D.1984) (Henderson, J., concurring in part and dissenting in part); *Connelly v. Connelly*, 362 N.W.2d 91, 92 (S.D.1985) (Henderson, J., dissenting); *Temple v. Temple*, 365 N.W.2d 561, 569 (S.D.1985) (Henderson, J., dissenting); *Stubbe v. Stubbe*, 376 N.W.2d 807, 809 (S.D.1985) (Henderson, J., dissenting); and as recent as the writer of this Court's opinion in *Straub v. Straub*, 381 N.W.2d 260 (S.D.1986). In *Straub*, the ex-husband never disputed the fact that he owed an obligation to support his ex-wife. The amount of alimony was the question considering his reduced income. In *Straub*, the reasonableness of the ex-wife's needs and the amount which the ex-husband could and ought to pay was to be considered. *Grant v. Grant*, 5 S.D. 17, 57 N.W. 1130 (1894).

As I pointed out in *Stubbe*, I have voted for rehabilitative alimony in *Booth v. Booth*, 354 N.W.2d 924 (S.D.1984) (alimony restricted to 15 months), and *Goehry v. Goehry*, 354 N.W.2d 192 (S.D.1984) (wife unable to work and in poor health). As I specially wrote in *Saint-Pierre v. Saint-Pierre*, 357 N.W.2d 250, 263 (S.D.1984), "[t]o me, rehabilitative alimony is an award of a monthly sum of money to rehabilitate a deserving spouse so that he or she may obtain the skills necessary to fend for himself or herself in life, by education or job training."

This Court has the power to revise or eliminate the alimony award on appeal. It is a most specific statute, SDCL 25-4-46. Ex-wife here has good health, a decent paying job, $20,000.00 as a lump-sum payment, a good automobile, personal property awarded to her of $5,435.00, a joint savings account award of $1,211.92, and money in a checking account. She has the family residence awarded to her, filled with furniture. With no one to support but herself, she makes this remarkable statement in her brief, through counsel: "Her lot in life now is comparable to a disposable plastic container whose appearance and presumed usefulness are gone." She is a middle-aged woman, at the age of 47, and life is hers, as she makes it. She can work for a living, as we are all expected to do, and it is preposterous for her to advocate that her life is virtually over, ruined, and destroyed by a divorce. This is emotionalism on her part to win an alimony award in the courts. At her health and at her age, and with her job at a bank, plus the property she has been awarded, if she lives with common sense and an ordinary degree of frugality, she can live very well in Sioux Falls, on her property award and salary. Certainly, as the majority recognizes, her ex-husband does not have to have two jobs, namely, a day job and a night job, to pay her $400.00 per month alimony. If she wants this extra income, let her get the night job together with her present day job. No man should have to work two jobs, that is, day and night, to pay alimony. Were this true, it would not be alimony, it would be slavery. This author's opinion on alimony is not out of sync with the factors established in *Morrison v. Morrison*, 323 N.W.2d 877 (S.D.1982), and *Guindon v. Guindon*, 256 N.W.2d 894 (S.D.1977). We should always

bear in mind the old case of *Grant v. Grant*, 57 N.W. 1130, for the principle of the reasonableness of the needs and that which the ex-husband can and ought to pay.

Time spent on earth, years on the Bench, and observation from two decades in the trial practice have brought me to the conclusion that there are usually three stories in these divorce cases: Her side, his side, and the way it really was. Here, it is true that the ex-husband took to drink, for a number of years, but in the last four years of the marriage, his problem with drinking intoxicants had abated if not nearly disappeared. But it is also true that aside from this, this ex-wife and ex-husband simply did not have the chemistry going between them that filled the marriage with love. The parties had a problem talking to one another about matters which arose during the marriage. There was a lack of communication between them and they did seek marriage counseling with the hope that if there was anything left of the marriage, they could put it back together. It was Joanne C. Cole who began to talk to Mrs. Sweeter, her next-door neighbor and friend, about the lack of communication with her husband and that she could not seem to get through to him. Ultimately, the marriage counseling did reveal that this ex-husband and ex-wife simply could not communicate and that it was fruitless to continue with the marriage unless there was some great substantive change. This change never resulted. This failure to communicate manifested itself at office parties where the ex-husband worked, when he would visit with his co-workers while his ex-wife would sit and visit with other people. There did not seem to be that oneness and precious interrelationship which would make a marriage successful and happy. The bottom line is that Rolfe Cole was not singularly the person who precipitated a breakdown in this marriage of 24 years.

Times have changed. *See* historical growth and evolution of alimony in *Connelly*, 362 N.W.2d at 92. Women today comprise 52% of the working force in our land. *Id.* at n. 1. The statute which established husbands as being the head of the house was repealed in this state. *See Martin*, 358 N.W.2d at 803 n. 3. We do not have a sick and disabled ex-wife in this case nor one without a job or training. We have an individual who has joined the American labor force and participates fully in it, of her own volition, and still would have her ex-husband support her. Under all of the facts and circumstances of this case and the authority conferred by the state legislature under SDCL 24–4–46, I would vacate the alimony award in toto. To that extent, I respectfully dissent to the majority opinion but agree with it in all other respects.