Ann L. HILBRANDS, Plaintiff
and Appellee,

v.

Marvin J. HILBRANDS, Defendant
and Appellant.

No. 16048.

Supreme Court of South Dakota.

Considered on Briefs May 26, 1988.

Decided Oct. 5, 1988.

Arthur M. Hopper of Austin, Hinderaker, Hackett & Hopper, Watertown, for defendant and appellant.

David R. Gienapp of Arneson, Issenhuth and Gienapp, Madison, for plaintiff and appellee.

SABERS, Justice.

Husband appeals the division of marital property and trial court findings that: 1) medical problems prevent wife from working and 2) he has greater earning capacity.

*Facts*

Marvin (Husband) and Ann (Wife) were married in 1972. This was a second marriage for both parties. Both have adult children from prior marriages only. Wife has an eleventh grade education and her employment experience consists of waitressing, janitorial work, and part-time sales of Mary Kay cosmetics. Husband has worked as an insurance agent and realtor. Currently, he does janitorial work and is employed with the local school district.

In 1973, the parties started a janitorial business. Both Husband and Wife worked in the business evenings and weekends. In 1983, Husband began driving buses and doing yard work during the day for the school district.

In 1984, Wife injured her elbow. She testified that she has experienced continuing pain and limitation of movement and was eventually forced to quit working in the janitorial business in October 1986. Wife filed for divorce in November 1986.

A trial was held on July 8, 1987. Upon stipulation of the parties, the trial court granted each party a divorce on grounds of irreconcilable differences. The Hilbrands had gross marital assets of $103,003.75 and liabilities of $32,831.00. The trial court awarded Wife assets valued at $64,808.00 and Husband assets valued at $38,195.75. The distribution of liabilities resulted in a net award of $49,427.60 to Wife and $20,-745.15 to Husband. No alimony was awarded to either party.

At the time of trial, Husband was sixty-one years old and Wife was forty-eight years old. Husband was earning approximately $714 per month from his school job and one janitorial account. Wife was not employed and had no income other than alleged sporadic sales of cosmetics.

## 1. WERE FINDINGS OF FACT CLEARLY ERRONEOUS?

Husband contends that the trial court erred in finding that health problems prevent Wife from returning to any of her previous employment. Additionally, Husband disputes the trial court's finding that his capacity to earn significantly exceeded that of Wife's. Findings of fact are reviewed under the clearly erroneous standard and will not be overturned unless the reviewing court is left with a firm conviction that a mistake has been made. *Smith v. Sponheim*, 399 N.W.2d 899 (S.D.1987). Husband claims *both* factual findings should be overturned on appeal as clearly erroneous.

### A. *Husband's Earning Capacity*

■ The record indicates that Wife's education and employment background limit any potential future employment to minimum wage positions. The record further reveals that her income from sales of cosmetics has been minimal.

In contrast, Husband has been both an insurance agent and a realtor. His janitorial business consists of only one account, but he has been bidding for other accounts. The business has had up to four or five active accounts. Husband also earns approximately $6,360 per year from his school district work.

Husband argues that because he is thirteen years older than Wife and is "rapidly approaching the age of retirement," his earning capacity is no better than Wife's. This argument ignores the respective educational and employment backgrounds of the parties, as well as Wife's medical problems. Even in the absence of Wife's medical problems, the evidence in the record is sufficient to support the trial court's finding that Husband's earning capacity significantly exceeded Wife's, and we cannot say it was clearly erroneous.

### B. *Wife's Medical Problems*

■ Wife testified that she sustained an elbow injury which resulted in continuing pain and disability. She claims she is unable to grip with either the thumb or index finger of her right hand due to the injury. She also testified that she sustained a weight loss of forty-two pounds and weighed eighty-eight pounds at the time of trial. It is not clear whether this weight loss was connected to the elbow injury. She testified that the pain and immobility in her hand worsened over a period of two years until she was unable to continue her janitorial work. She claimed the injury also prevented her from returning to waitressing. Wife testified that her inability to use her right hand made the application of makeup or even opening tubes of makeup impossible, thereby hampering sales demonstrations of cosmetics.

Husband contends Wife's own testimony indicates she is able to sell cosmetics, as she testified that she sold cosmetics during the period of her claimed disability. However, there was also testimony from which the trial court could conclude that because of her medical problems the sale of cosmetics would never be a regular or reliable source of income for her.

Husband also argues that there is no medical evidence in the record which supports Wife's claimed disability. Although Wife did not present expert medical testimony at trial, she had several physicians' reports admitted as exhibits. The various medical records reveal that at least two physicians believed that Wife was prone to or was exhibiting signs of reflex sympathetic dystrophy. Lawyers' Medical Cyclopedia, § 15.25 defines reflex sympathetic dystrophy as a complication of joint injury which can cause "a profound increase in pain and muscle spasm, and profoundly reduce the capacity of the joint to function." *Id.*

There is nothing in the medical records which disputes Wife's testimony of pain, swelling, and other problems associated with the elbow injury. Further, Husband did not present any evidence to rebut the medical reports, or Wife's own testimony concerning her health problems. Nor did Husband present any evidence to support his claim that Wife's condition could have been improved by following physicians' orders and with exercise.

In light of Wife's limited training and experience and medical problems we are not left with a firm conviction that a mistake was made by the trial court in finding that she was unable to return to her previous employment. *Smith, supra.*

## 2. DIVISION OF MARITAL PROPERTY

■ The trial court has broad discretion in making a division of marital property and its judgment will not be set aside absent a clear abuse of discretion. *Goehry v. Goehry,* 354 N.W.2d 192 (S.D.1984). SDCL 25-4-44 requires the trial court to consider equity and the circumstances of the parties when dividing marital property. The principal factors to be considered when making the property division are: "the length of the marriage; the value of the property; the age and health of the parties; their respective competency to earn a living; the contributions of each party to the accumulation of the property; and the income producing capacity of the parties' assets."

*Cole v. Cole,* 384 N.W.2d 312, 314 (S.D. 1986).

The parties were married for approximately fourteen years. They had accumulated virtually all their assets during the course of the marriage, and contributed equally to the accumulation of the property. The age, health, and competency to earn a living of the respective parties was discussed above.

The parties' major assets were:

| | |
|---|---|
| House | $45,000.00 |
| 1982 Cutlass | 3,500.00 |
| 1986 Van | 16,000.00 |
| IRA (Husband) | 23,000.00 |
| IRA (Wife) | 1,071.00 |
| Promissory Note from Roger Hilbrands | 7,135.75 |
| Refund cash–Van | 1,447.00 |

Wife was awarded the marital home, subject to a $15,000 mortgage, the 1982 Cutlass, her IRA, and $10,000 of Husband's IRA. Husband was awarded the 1986 van, the remaining $13,000 of his IRA, and the promissory note from his son. The award to Wife appears to far exceed the award to Husband. The award of the marital home to Wife creates this disparity. However, this disparity is substantially offset by several considerations and certain findings of the trial court.

The trial court found that all of the self-employment Social Security payments for the janitorial business were made in Husband's name alone. Similarly, most of the contributions to the IRA accounts were placed into Husband's account. The award to Wife is also supported by the trial court's findings that Wife was unable to return to her previous employment and that Husband's earning capacity was substantially greater than Wife's.

In contrast to Wife, the trial court was aware that Husband had a steady source of income and would soon be eligible for Social Security payments. Therefore, the trial court's decision to award no alimony to Wife also supports the court's property division. Finally, Husband has an interest in additional assets apart from the marital property. These assets include a Certificate of Deposit and an interest in 120 acres of land in Grant County, South Dakota,

subject to a life estate in his eighty-six-year-old mother.

The findings of fact and other considerations support the conclusions and there was no abuse of discretion in the division of marital property. *Cole, supra.*

We approve Wife's petition for attorney fees in the amount of $700.

AFFIRMED.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I respectfully dissent. Property division here was not only unequal and disparate, it was also inequitable. Wife awarded 70% of property; husband awarded 30% of property. Finding of Fact V finds: "That virtually all of the assets of the parties were accumulated during the course of the parties marriage." Therefore, I am convinced that a mistake has been made and the findings of fact and conclusions of law are clearly erroneous. *Wiggins v. Shewmake,* 374 N.W.2d 111 (S.D.1985).

There is no medical evidence, in this record, to support a finding of this lady's alleged disability. In fact, testimony reflects that she refused to obey the advice of her doctors. She was supposed to return after October 24, 1986, for a "recheck" with Dr. Suga, but she never returned. Dr. Suga was a specialist to whom she was referred. Plaintiff's Exhibit 10, his office notes, reveal: "Sensory exam today is subjectively normal." Also, he noted: "She has almost full pronation and full supination." Dr. Johnson, because of her complaints on January 21, 1986, reviewed her X-rays, which noted: "Three views of the elbow show no significant abnormalities." Because of her complaints, Dr. Allen thought she should have a neurological consultation. Dr. Allen's letter of January 23, 1986, to Dr. Johnson reflected that he could find "no changes in circulation" back on February 13, 1985. He did find "some tenderness over the lateral sulcus at the elbow." Dr. Allen, in said letter, further indicated that there was no noticeable swelling and that she had "some evidence of nerve trauma and tendonitis." For an entire year lacking a few days, she did not return to Dr. Allen at the Bartron Clinic at Watertown. She was complaining to Dr. Allen; she had some ultrasound treatments with a chiropractor for the past year; in other words, she left his care. On January 21, 1986, Dr. Allen found some weakness of grasp and tenderness about the right elbow, but could find no other abnormality. He was "at a loss as to what further therapy might be instituted" so he referred her to Dr. Johnson in Sioux Falls. Dr. Johnson's report of February 10, 1986, indicates: "I believe that the tingling and dysesthesia that she has *may be* related to very early reflex sympathetic dystrophy...." (Emphasis added.) He also stated: "Her EMG studies are entirely negative by Dr. Cho." These reports do not satisfy any diagnosis of a permanent injury, established as of a reasonable medical probability. *Thomas v. St. Mary's Roman Catholic Church,* 283 N.W. 2d 254, 258 (S.D.1979). Dr. D. Cho, M.D., saw and examined plaintiff. Essentially, he could find absolutely nothing wrong except her complaints plus a mild weakness of one finger. His electrophysiological interpretation is "[n]ormal conduction of the median and ulnar (both motor and sensory) nerves in right upper extremity"; "[n]ormal F-loop across the right brachial plexus"; "[n]ormal EMG of the right upper extremity." Dr. Cho concluded that there was no scientific evidence to support any nerve lesion to account for her symptoms and recommended "Mobilization exercise following heat (hot pack or paraffin wax) might benefit this patient." There is no medical testimony to establish that she is unable to work.* Both parties had ex-

---

* Notwithstanding this, the trial court reflects on Finding of Fact VIII that wife cannot return to her previous employment or sell Mary Kay products. This finding of fact is clearly erroneous. Majority opinion's attempt to become a doctor, via Lawyers' Medical Cyclopedia, is unsound in fact; it amounts to a medical diagnosis in this Court by resorting to a medical text. Dr. Suga stated: "[S]he is prone to reflex sympathetic dystrophy and I would agree with this." He did not say she had it. The trial court did not find that she had it.

tremely limited income, immediately before trial, and thus the trial court did not award alimony.

If we intend, in South Dakota, to continue to go about being totally unfair to men in divorce cases, we should just, out and out, say so. The issue here is fairness. This case was not decided fairly, as it is a lopsided division of property (the wife awarded two and one-half times more than the husband). The trial court sits as a judge in equity. He is supposed to do equity. Equity would demand an approximate equal division of the property accumulated by these parties. I would reverse.