Roland A. ADAM, Plaintiff
and Appellee,

v.

Lou Anne ADAM, Defendant
and Appellant.

No. 16026.

Supreme Court of South Dakota.

Considered on Briefs Dec. 1, 1988.

Decided Feb. 8, 1989.

Kathleen F. Trandahl of Covey Law Office, Winner, for defendant and appellant.

Michael J. Whalen, Lake Andes, for plaintiff and appellee.

SABERS, Justice.

Roland Adam (Roland) obtained a divorce on the grounds of adultery and was awarded custody of the minor child, Ralandi. Lou Anne Adam (Lou Anne) appeals. We affirm.

*Facts*

Roland and Lou Anne were married on August 16, 1980. At the time of divorce, Roland was twenty-nine and Lou Anne was thirty-five. Both were in good health. The

parties had one child during the marriage, Ralandi, who was five at the time of divorce. Lou Anne had two children from a previous marriage.

Roland was employed with a gas company in Platte, South Dakota, earning an annual net salary of approximately $13,000. Lou Anne was employed as a part-time cook at Platte Community Memorial Hospital earning approximately $80 per week. She was also receiving $200 per month child support from her previous husband. The court divided the property by awarding $16,226 in property to Lou Anne and $7,807.50 to Roland. Roland received custody of Ralandi. Neither party was awarded alimony or present child support.*

The court found by a preponderance of the evidence that it was in Ralandi's best interests to award custody to Roland. This finding was based upon Roland's testimony that he cared for the child's physical needs, took her to church and Sunday School, shared activities with her, and was involved in teaching her necessary school skills. Roland showed a wide knowledge of her needs and interests, and there was testimony from Roland, and others, that he provided a more stable and predictable home environment for her.

In contrast, the court found that Lou Anne did not present a good environment for the child because of her preoccupation with friends, other interests, and involvement in an adulterous relationship. There was circumstantial evidence that Lou Anne was involved in an extra-marital affair with Mervin Sterk (Sterk). This included evidence that the two often saw one another at parties, where Roland was not present. One party was an all night video party attended by Sterk, Lou Anne, Ralandi, and others. On another occasion, Sterk and Lou Anne spent the night at the residence of Sterk's friend. There was evidence that Lou Anne left Roland for three days during which she stayed at a Mitchell motel. Sterk claimed to be deer hunting during this time. The evidence showed that Sterk,

who was married, traveled from Sioux Falls to Platte nearly every weekend for a period of three months. Sterk would stay with his sister, who was Lou Anne's best friend. In addition, there were numerous long distance phone calls between Lou Anne and Sterk, which Lou Anne originally attempted to hide. There was also testimony from Sterk's minor son that he saw the two kissing at a party. The court rejected Lou Anne's denial of the extra-marital affair, finding that her testimony was not credible.

The court found that the child was exposed to and affected by the relationship between Lou Anne and Sterk. This finding was based on evidence that Lou Anne often took the child to the parties where she would meet Sterk. Roland testified that the child told him that on an overnight camping trip she had slept in the car alone, while Lou Anne and Sterk slept in a tent and that this experience scared her. Roland also testified that the child had described Lou Anne's friends as "icky." There was testimony that Ralandi was exposed to obscene gestures and foul language from both Lou Anne and her friends. In addition, there was evidence that Ralandi would attempt to run away and feign sickness when the time came for Roland to return her to Lou Anne, and that the child resorted to bed wetting while in the custody of the mother, but that the problems lessened in the father's care.

### 1. *Was finding of adultery clearly erroneous?*

Findings of fact are reviewed under the clearly erroneous standard. They will not be overturned unless we are left with a definite and firm conviction that a mistake has been made. *Hilbrands v. Hilbrands,* 429 N.W.2d 750 (S.D.1988); *Cole v. Cole,* 384 N.W.2d 312 (S.D.1986); *Temple v. Temple,* 365 N.W.2d 561 (S.D.1985). The findings of fact are presumptively correct and the burden is upon the challenger to show error. *Insurance Agents, Inc. v.*

---

* Child support was not awarded because Lou Anne lacked the present means to pay support. However, the court provided that Lou Anne should pay child support in accordance with SDCL 25-7-7 if her future earnings exceeded the sum of $600 per month.

*Zimmerman,* 381 N.W.2d 218 (S.D.1986); *Temple, supra.*

■ It is not necessary in divorce cases to show a direct act of adultery. *Rykhus v. Rykhus,* 319 N.W.2d 167 (S.D. 1982). Adultery may be inferred from the circumstances which when proven lead naturally and fairly to such a conclusion. *Rykhus, supra.* Though Lou Anne and Sterk denied such a relationship, the court found their testimony was not credible. Due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses and to weigh their testimony. *Rykhus, supra; Watt v. Watt,* 312 N.W.2d 707 (S.D.1981). Further, we must accept the evidence most favorable to the decision, and any reasonable inferences drawn therefrom. *Isaak v. Isaak,* 278 N.W.2d 445 (S.D.1979); *Schutterle v. Schutterle,* 260 N.W.2d 341 (S.D.1977). The trial court was not clearly erroneous in granting the divorce to Roland on the grounds of adultery as there was sufficient circumstantial evidence to support the finding.

### 2. *Custody of Ralandi to father.*

Lou Anne claims that the evidence was insufficient to support the finding that awarding custody to Roland was in the best interests of the child. She also argues that the best interests require compelling reasons to separate the child from the other siblings. *Mayer v. Mayer,* 397 N.W.2d 638 (S.D.1986). She claims that there were no compelling reasons to separate the child from her half-brother and half-sister. The trial court has broad discretion in awarding custody of the minor child and we will not reverse unless a clear abuse of discretion is shown on the record. *Mellema v. Mellema,* 407 N.W.2d 827 (S.D.1987); *Mayer, supra; Haak v. Haak,* 323 N.W.2d 128 (S.D.1982).

### a. *Sufficiency of the evidence.*

■ In awarding custody, the court must consider the best interests of the child in respect to temporal, mental, and moral welfare. SDCL 30–27–19. The court found that Roland was better able to provide for each of these needs. The court based this finding on evidence that Roland provided better for Ralandi's physical and social needs and that her behavior was better adjusted while in his care. The finding was also based, in part, on Ralandi's exposure to the affair between Lou Anne and Sterk. While marital misconduct does not make one an unfit parent, evidence that the misconduct has a harmful effect on the child will be considered. SDCL 25–4–45.1; *Haak, supra; Madson v. Madson,* 313 N.W.2d 42 (S.D.1981); *Hanks v. Hanks,* 296 N.W.2d 523 (S.D.1980). The trial court found that Ralandi's exposure to this relationship had and would continue to have a harmful effect on her. There is sufficient evidence in the record to support these findings and we are not convinced that a mistake was made. *Hilbrands, supra.*

### b. *Separating the siblings.*

■ The best interests of the child require a showing of compelling reasons before separating siblings in custody matters. *Mayer, supra.* Such a showing is necessary even for half-siblings. *Id.* In *Mayer,* the two girls, who were half-sisters, were two years apart in age and shared a strong, common bond of childhood. No compelling reasons were shown to separate the siblings. As a result, the *Mayer* court held that it was an abuse of discretion for the trial court to separate the children in awarding custody.

■ Here, there was an age difference of nine years between Ralandi and her closest half-sibling. John was fourteen years old and interested in horseback riding, fishing, bowling, and wrestling. Sheri was sixteen years old and occupied with friends and boyfriends and a part-time job. There was no evidence of shared activities between the children other than Sheri's baby-sitting of Ralandi when Lou Anne was away from the home. There was some indication that the older children showed some resentment toward Ralandi. The court found no common bond of childhood between Ralandi and the older children. In addition, and unlike *Mayer,* the court found misconduct on the part of Lou Anne and

that this misconduct had a detrimental effect upon Ralandi. The court also found that Roland provided a more stable and positive environment for Ralandi. These findings were sufficiently compelling and the court did not abuse its discretion in awarding custody of the child to Roland, even though this resulted in separating the siblings. *Mellema, supra; Mayer, supra.*

### 3. *Was cross-examination improperly restricted.*

A court service officer conducted a home study and made recommendations concerning custody to the court. One of the individuals interviewed for the study stated that she had serious concerns with Lou Anne obtaining custody of Ralandi and that Lou Anne's friends had reputations for drinking, partying, and wife swapping. On cross-examination Lou Anne's counsel established that the witness' knowledge was based on hearsay information from persons whose names she would not reveal, but believed were honest and truthful. Lou Anne's counsel continued with this line of questioning until curtailed by the trial court:

> THE COURT: We are not getting anywhere with this line of questions. I'll ask you to cut it off.
>
> [COUNSEL]: She's painting guilt by association.
>
> THE COURT: I've accepted that as objectionable. I've sustained the objection. I don't intend to consider it. And so consequently, we are getting nowhere. You're just arguing with her. We are not going to get anywhere with harassment. We will cover the entire ... community by the time you're done. I would suggest we drop that line of questioning and go on to something else.

■ A party has the right to cross-examine all persons involved in the preparation of a court service report relating to custody. *Schmitz v. Schmitz*, 351 N.W.2d 143 (S.D.1984); *Krebs v. Krebs*, 83 A.D.2d 989, 443 N.Y.S.2d 530 (1981); *Wunsch v. Wunsch*, 248 Wis. 29, 20 N.W.2d 545 (1945).

In a civil case, while the suppression of all cross-examination may amount to a denial of due process, restriction of cross-examination would rarely rise to constitutional dimensions, although it might amount to an abuse of discretion where the probative value of the excluded evidence was sufficiently high.

3 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 611–46 (1988). Once the right of cross-examination has been substantially and fairly exercised, the allowance of further cross-examination is discretionary. 81 Am.Jur.2d *Witnesses* § 464 (1976). Lou Anne's counsel was permitted to impeach the witness. The court determined that Lou Anne's counsel was not accomplishing anything further by continuing, except argument. Counsel failed to make an offer of proof to show otherwise and the record does not reveal that the trial court abused its discretion in restricting the cross-examination.

AFFIRMED.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., concurring specially.

HENDERSON, Justice (concurring specially).

In addition to the facts depicted in the majority opinion, there are certain additional facts which are crucial to support Judge Kern's decision insofar as separating these siblings (compelling reasons) and awarding custody of this girl (best interests of the child) to her father. Such facts include:

1) Child complaining that her mother forgot to feed her;

2) Child complaining on many occasions that she would not get a full meal but would get only a sandwich;

3) Child complaining that her "mama lies";

4) Child expressing that she wanted to stay with her Daddy every night;

5) Child drawing pictures exhibiting that she lived in a house which was

dark and reflecting the mother being outside in a car and with an "X" over the house, stating she did not want to live in that house anymore;

6) Mother trying to hide child behind a tree so that father could not see the child;

7) Child complaining that mother tried to make her "duck down" in a car because "mama was there with Mervin ducking down" (the cunning exposed here was teaching the little girl to be involved and clandestine in the mother's affair);

8) A decade of difference in the ages of child and the two children by appellant's first marriage;

9) Mother's lifestyle of partying, and being with "friends" who were adults likewise in a partying atmosphere; child exposed to this;

10) Evidence that there was no close bond and shared childhood existing between child and her half-siblings, including sworn testimony that child's half-sister was interested in her teenage life and would decline association, repeatedly, with child, including statement by half-sister that child should go to the Dad because he has the time; and

11) Child was just finishing kindergarten and half-sister was graduating from high school; commonality of interests not shared.

Justification for the splitting of custody can be compelling because of the circumstances of each case. In my special concurrence in *Mayer*, 397 N.W.2d at 646, cited by the majority, I cited situations where splitting custody could be compelling. One of those reasons was the "inability of either parent to care for all of the children." Here, this mother, because of her lifestyle, was unable to care for this little girl. Even the little girl recognized that she could not survive on lies and sandwiches. She knew it was wrong to duck down in a car and to hide behind a tree. She so detested her life that she drew pictures to display her hostility towards her life with her mother. Judge Kern recognized this and found it to be in the best interests of the child to award child to the father, and likewise found compelling reasons to thereby split this little girl away from her half-brother and half-sister. Without repeating the authorities for Judge Kern's action, I refer to the authorities specified in my special concurrence in *Mayer*.

In summation, we ordinarily would see the best interests and welfare of the children promoted if they live together in one home enjoying a natural association of brother and sister, or brother and brother, or sister and sister. *Andersen v. Andersen*, 399 N.W.2d 363 (S.D.1987) (citing *In re Marriage of Gonzales*, 373 N.W.2d 152, 155 (Iowa App.1985); and *In re Marriage of Little*, 26 Wash.App. 814, 818, 614 P.2d 240, 243 (1980)). *See also In re Marriage of Orte*, 389 N.W.2d 373 (Iowa 1986). This does not, however, as a judicial holding, repeal the State Legislature's will reflected by SDCL 30–27–19, which absolutely requires a trial judge to consider the best interests of a child in respect to its temporal, mental, and moral welfare. Though it is seldom mentioned, that same statute prohibits a preference of one parent, over the other, "in determining custody." Rather, the ultimate criteria is the "best interests of the child," and that is precisely how this circuit judge viewed his responsibility. Compelling reasons here existed to separate a brother and two sisters. *Cf. Doan Thi Hoang Anh v. Nelson*, 245 N.W.2d 511 (Iowa 1976).