Delwyn M. MILLER, Plaintiff and Appellee,

v.

Debra G. MILLER, Defendant and Appellant.

No. 16374.

Supreme Court of South Dakota.

Submitted on Briefs April 27, 1989.

Decided July 19, 1989.

Scott K. Bradshaw of Aho & Bradshaw, Brookings, for defendant and appellant.

Thomas L. Fiegen of McCann, Martin & McCann, P.C., Brookings, for plaintiff and appellee.

SABERS, Justice.

Debra Miller (Debra) appeals a decree of divorce granting custody of Doyle James Miller (D.J.) to Delwyn Miller (Delwyn) and dividing the marital property.

### Facts

Delwyn and Debra were married on September 21, 1979. They had one child during the marriage, D.J., who was seven at the time of divorce. Debra also had a fourteen-year-old daughter, Tina, from a previous marriage and an infant son, Cody. Her boyfriend, James Plueger (Plueger) was Cody's father.

Delwyn was thirty-seven years of age and employed by Hicks Enterprises in Brookings, South Dakota, at the time of divorce. His weekly net income was $286.71. Debra was thirty-three and unemployed at the time of divorce. She was residing with Plueger who farmed near Verdi, Minnesota.

The marriage of the parties was unstable and there was little communication. Delwyn testified that he had been unfaithful on only one occasion during the marriage, but Debra was unaware of his affair. As the marriage continued to deteriorate, Debra began having an affair with Plueger. In June of 1987, Debra believed she was pregnant with Plueger's child. She left Delwyn and D.J. because of this belief and the poor condition of the marriage. Debra was one and one-half months pregnant at the time she left.

D.J. remained with Delwyn until the time of divorce in June of 1988. The testimony showed that Delwyn had a good relationship with D.J. and provided for D.J.'s needs after Debra left. There was also evidence that D.J. was doing well in school and that

Delwyn took an interest in D.J.'s schooling and helped him in his studies.

Delwyn testified that he began having an intimate relationship with another woman, Kathy Lee (Kathy), following his separation from Debra. He admitted to having sexual intercourse with her at his home, but claimed that D.J. was unaware of this relationship. Further, he indicated that Kathy had stayed over an entire night once, because of bad weather, and that she had slept on the couch. Delwyn admitted that he went out socially two to three nights a week and often became intoxicated. On those evenings, he testified that he would leave D.J. overnight with his uncle and aunt, with whom D.J. enjoyed staying.

Debra was D.J.'s primary caretaker prior to the separation and believed that Delwyn was often too hard on D.J. and inflexible with the child. She testified: that D.J. enjoyed visiting her and often cried when he had to leave and return home to his father; and that D.J. and his half sister Tina had a good relationship and often confided in one another. Delwyn believed Tina and D.J. had a normal brother/sister relationship. Debra also testified that D.J. liked Cody and enjoyed holding and feeding him.

Delwyn brought an action for divorce after Debra left in June of 1987.[1] Trial was held on May 18, 1988. On June 21, 1988, the court entered its judgment and decree of divorce. The decree granted a divorce to Delwyn on the grounds of irreconcilable differences. Delwyn was given custody of D.J. subject to reasonable and liberal visitation rights to Debra. The decree also divided the property between the parties and ordered Debra to pay $50 per month child support. Debra appeals the custody determination and property division. We reverse and remand custody and affirm the property division.

### 1. Compelling reasons to separate the siblings.

Debra argues that the best interests of the child require compelling reasons to sep-

---

1. The parties originally entered into a custody, support, and property settlement agreement. However, after Debra hired an attorney, she made a motion to set aside the agreement, which motion was granted.

arate siblings. She argues that the trial court failed to set out compelling reasons to separate D.J. and his half sister Tina, and that no such reasons exist. Delwyn claims that the trial court properly found that it was in D.J.'s best interests to grant custody to him.

■■■ We have held that the best interests of the child require compelling reasons to separate siblings. *Adam v. Adam*, 436 N.W.2d 266 (S.D.1989); *Mayer v. Mayer*, 397 N.W.2d 638 (S.D.1986). Compelling reasons are necessary to separate even half-siblings. *Adam, supra; Mayer, supra*. In *Mayer*, we stated:

> The evidence shows that the trial court gave no consideration to the profound effects of ending Jennifer's valuable relationship with her sister. Nor did it provide any persuasive rationale for splitting them up. Justice requires that society exercise its moral duty to insure that children in a family enjoy the right to remain together, to share each others lives, and to grow up together, until such time as necessity and the welfare of the children, itself, requires their separation.... For the trial court to conclude that it was in Jennifer's best interest to award custody to Frederick without adequate findings regarding such a crucial consequence of the custody arrangement, "requires reversal." (citations omitted).

*Id.* at 644.

In this case the trial court made a single reference to D.J.'s relationship with Tina, stating that there was testimony the two got along. There are no other references to either Tina or Cody in the findings of fact, conclusions of law or in the memorandum opinion which was incorporated by reference. The court failed to make any findings whether compelling reasons existed to separate the children.

Delwyn distinguishes the present case from *Mayer* in that the separated sisters in

*Mayer* were only two years apart in age and had grown up together in a close relationship. He argues that while D.J. grew up with Tina, there are seven years separating the children, as Tina is fourteen and D.J. only seven. He claims that under these circumstances compelling reasons are unnecessary to separate the children. *Mayer* is a bright line rule which requires compelling reasons to separate siblings, regardless of their ages and relationships. However, the ages and relationships of the siblings are factors in determining whether compelling reasons exist to separate them. *Adam, supra; Andersen v. Andersen*, 399 N.W.2d 363 (S.D.1987). The failure to consider whether compelling reasons exist to separate the siblings as part of the best interests of the child requires reversal and remand of the custody issue. The trial court should reconsider the best interests of D.J. in light of whether compelling reasons exist to separate D.J. from his half sister, Tina, and his half brother, Cody.[2]

### 2. *Property Division.*

■■ Delwyn received the home valued at $35,000,[3] some personal property, and assumed the marital debts which exceeded $40,000. Debra did not request the home, but set out a list of personal property she wished to receive. She was awarded the requested property with the exception of $100 to replace a damaged water bed mattress and $3,000 to replace her car which had been wrecked in an accident prior to trial. The trial court also denied her request for D.J.'s bedroom set and basketball hoop because she was not granted custody. Debra claims that the trial court erred in not awarding her money to replace the damaged mattress and automobile.

The trial court must consider equity and the circumstances of the parties in dividing marital property. *Henrichs v. Henrichs*, 426 N.W.2d 569 (S.D.1988); *Cole v. Cole*, 384 N.W.2d 312 (S.D.1986). In this case, the total real and personal property received by Delwyn was only slightly more

---

2. Since we are not deciding the merits or the questions raised in Justice Henderson's special writing, it is better to attempt neutrality and express no opinion thereon.

3. Delwyn testified that the valuation of $35,000 was based on his attempt to sell the home for $38,000 and receipt of one offer of $32,000. The trial court apparently found this valuation reasonable.

than the marital debts he assumed.[4] Debra received all the property she requested. The only exceptions were the cash payments. She received this property, valued at more than $3,000, debt free. The division of property was equitable and the trial court did not clearly abuse its discretion. *Hilbrands v. Hilbrands*, 429 N.W.2d 750 (S.D.1988), *Goehry v. Goehry*, 354 N.W.2d 192 (S.D.1984).

Reversed and remanded in part and affirmed in part.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., specially concurs.

HENDERSON, Justice (specially concurring).

Notwithstanding the facts, as portrayed by the majority opinion, the factual showing in this case reflected the father's ability to provide for his son's spiritual, moral, physical and economic welfare.* Father and son have an extremely close relationship and this was testified to by three witnesses. Since the mother left the family home, in June of 1987, father and son have experienced a general uplifting in their pursuit of happiness. The record is replete with the son's prospering in school and social relationships.

It is true that the trial judge did not set forth the "compelling reasons" in express language, nor use any magical words to delineate "compelling reasons". However, the trial judge weighed his decision carefully on the custody matter which is exemplified by expressions of the excellent relationship between the father and the son as well as a healthy environment.

---

**4.** Delwyn received approximately $42,000 in property, including the home, subject to debts exceeding $40,000.

\* Reference is made to footnote 2 in the majority opinion. Appellant and Appellee both assiduously briefed the issue of the trial court's award of D.J. to the father under the "best interests of the child" rule. SDCL 30-27-19; *Flint v. Flint*, 334 N.W.2d 680, 681-2 (S.D.1983). This statutory authority and hallowed precedent requires the trial judge, in awarding custody of minors, to consider the best interests of the child's temporal, mental, and moral welfare. At the time the trial judge decided this, said issue was foursquare before the trial court.